# EMACK *v.* CAMPBELL.

MECHANICS' LIENS; NOTICE OF LIEN; EQUITY PRACTICE; BUILD-
    ING CONTRACTS; LIQUIDATED DAMAGES; ACCOUNTING.

1. Under the Mechanics' Lien Law of this District requiring that no-
    tices of lien shall "specifically set forth the amount claimed,"
    it is necessary only to set forth precisely the amount claimed,
    and not the items that go to make up that amount.

2. It is not necessary for persons claiming mechanics' liens, who
    have been made parties defendant to a suit brought by other
    claimants of similar liens to enforce them, to file cross-bills or
    to take other affirmative action in order to participate in the
    fund to be realized by the suit.

3. A notice of lien filed October 6, 1893, under the Mechanics' Lien
    Law of this District, requiring the notice to be filed within
    three months after the completion of the building, is sufficient
    where the testimony is that the work on the houses was com-
    pleted "probably sometime about the middle of July," 1893,
    although the bill of complaint alleges, and the lienor, who
    was made a defendant to the bill, and the owner, in their
    answers admit that the houses were completed "on or about
    the first day of July, 1893."

4. Where a building contract provides that the contractors shall pay
    to the owner, by way of liquidated damages, a certain sum for
    every day the buildings shall remain incomplete after the day
    fixed for their completion, the provision will be enforced, in
    the absence of anything to show that it is unreasonable, harsh
    or oppressive, or that the amount stipulated is greatly in excess
    of a fair rental value of the premises upon the completion of
    the houses.

5. When the aggregate of claims for which mechanics' liens are filed
    exceeds the balance in the owner's hands, such balance should
    be distributed *pro rata*; and for claims which have already
    been paid or satisfied by the owner out of such balance, she
    should, on an accounting, be given credit according to the
    *pro rata* share to which such claimants would have been entitled.

No. 835. Submitted January 20, 1899. Decided February 7, 1899.

HEARING on an appeal by one of several defendants from
a decree of the Supreme Court of the District of Columbia

directing the sale of certain real estate in a suit to enforce mechanics' liens.   *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree in equity whereby a sale was decreed of certain real estate for the satisfaction of mechanics' liens filed against it.

The original complainants in the suit were the appellees, John T. Campbell and Theodore H. Burditt, who were partners dealing in lumber, and who as such partners furnished lumber to the value of $970.25 to a firm of W. F. Kerby & Brother, builders and contractors, for use in certain houses which the said builders ·had engaged to construct for the appellant, Mrs. Marion Emack.   The contractors, who had become financially embarrassed, abandoned the work before its completion; and two other persons, Charles R. Munroe and William D. Campbell, who were sureties on a bond given by the contractors for the faithful performance of their contract, undertook to finish the work; and the work was finished by them, although not within the time limited for it by the contract.   But disputes arose, and the complainants and others filed notices of liens under the Mechanics' Lien Law.   Subsequently, the complainants instituted the present suit in equity to enforce their lien ; and they included as defendants to their suit Mrs. Marion Emack, the owner of the property, the other persons, who had filed notices of lien, and the trustees and benenficiary under a certain deed of trust that had been given upon the property wherewith to raise the money needed for the building of the houses.

After answers by some, although apparently not by all the defendants, testimony was taken ; and the proceedings resulted in a preliminary decree establishing the respective liens of the parties and referring the cause to the auditor of the court to state an account, and thereafter, upon the auditor's report, in a final decree adjudging certain sums to be

due to certain lien holders, and decreeing a sale of the property in the event that Marion Emack should not pay these several sums within a certain specified time. From this decree the present appeal has been prosecuted.

In the record before us the answers of the trustees and beneficiary under the deed of trust which have been mentioned are not given; and it is not stated what action was taken by the court in regard to their interest. But they do not seem to have appealed, and we are informed in the brief of the counsel for the appellant that their rights are not affected by the decree, inasmuch as the deed of trust was executed and recorded before any of the liens attached which are sought to be enforced.

Some of the parties holding claims or claiming to have liens have been settled with; and the controversy, so far as the present appeal is concerned, is narrowed down to four lien claimants and the statement of the account as between them and Mrs. Emack. The claimants yet interested are the original complainants, Campbell and Burditt, James T. Summers, Henry W. Eno, and the Capitol Hill Brick Company; and in the assignment of errors made on behalf of the appellant, among the questions raised are: (1) Whether the several notices of lien filed by them are sufficient under the law; and, (2) Whether, under the pleadings in the cause, there could be any affirmative relief in favor of the three parties last mentioned or any award whatever in their favor, as they were merely defendants in the suit and had filed no cross-bill or taken any other affirmative action. Two of the three, however, answered, and in their answers fully stated their claims.

*Mr. D. W. Baker* and *Mr. Wm. Meyer Lewin* for the appellant.

*Mr. W. H. Sholes, Mr. Alex. H. Bell, Mr. F. H. Stephens* and *Mr. Leon Tobriner* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the first question, the contention is that the notices of lien, although in the usual form heretofore generally followed in this District, do not conform to the requirements of the law.

The notices in the present case are all substantially in the same form. That of the complainants in the suit is in the following terms:

"Notice is hereby given that we intend to hold a mechanics' lien upon Lots 37, 38, 39, 40 and 41, in Emack's subdivision of lots in Square 516, situated in the city of Washington, in the District of Columbia, and the buildings thereon, for the sum of nine hundred and seventy $\frac{25}{100}$ dollars ($970.25), with interest from ------ 189—, being amount due us for labor and material (lumber) furnished for the construction of said buildings under and by virtue of a contract with W. F. Kerby & Bro., the owner's contractors."

The others only differed from this in the matter of amount and the statement of the materials furnished or work done, as sand, bricks, and brick work. It is argued that these notices do not comply with the requirement of the law that the person giving such notice and claiming the lien shall "*specifically* set forth the amount claimed" (Rev. Stat. for D. C., Sec. 693, Act of July 2, 1884, 23 Stat. 64, Sec. 2); and that due compliance with the law demands the incorporation of an itemized account in the notice.

We can not accede to this view. The verbal criticism by which the term "specifically," as used in the Act of Congress, is sought to be interpreted as the equivalent of the expression "in detail," does not seem to us to be sound, or to be in conformity either with the letter or with the spirit of the law. The act undoubtedly requires explicitness and certainty; it requires that the owner of the property, for the purpose of protecting himself in his further dealings with his contractor, should have full and accurate notice of the claims of those

who deal with the latter upon the faith of the legal liability of the property. For that purpose it requires that "the amount claimed" should be set forth *specifically*; but it is the amount claimed, not the items that go to make up that amount, that is required to be so stated. Precision is demanded in the statement of that amount—not approximation, not conjecture. This is what the law requires; and this is what is meant by the use of the word "*specifically*." If we turn to the lexicographers, we find that Webster defines the word as the equivalent of "*definite*," or "precise." It is, therefore, precision in the statement of the amount, not the detail of an itemized bill of particulars, that is here demanded; and in accordance with this idea has been the uniform practice in this District, upon which many titles repose.

We think that the notices of lien given in the present instance were sufficient in law.

2. In the second place, it is contended that three of the four parties here claiming liens are not entitled to relief in the present suit, because they have taken no affirmative action, by way of cross-bill, petition, bill, or otherwise, to ask for relief. The complainants in the original bill of complaint, of course, are not included in this objection, which is aimed only at the lien claimants who were made defendants to that bill.

One of these lien claimants, James T. Summers, who had filed his notice of lien in due form, such as we have just held to be sufficient, and who was subsequently made a party to the bill as defendant, caused his appearance to be entered to the bill, but never answered or took any other action whatever in the case. His claim, however, was fully admitted by the appellant, Marion Emack, in her answer to the bill, although she denied the sufficiency of his notice of lien on the ground which has already been disposed of, and denied also his right to relief in this suit on the ground, now under consideration, of the absence of affirmative action

by him in the suit.    It would seem to have been on account of this admission of his claim by the person principally liable, that Summers deemed it unnecessary to take further action in the prosecution of his claim.

The other two of these three lien claimants, Henry W. Eno and the Capitol Hill Brick Company, filed their answers to the bill of complaint, and in those answers stated their claims as fully as though they filed original bills, or cross-bills, or petitions in this suit.

It is true, as a general rule, that a defendant in equity can not have affirmative relief, unless he makes himself a complainant, either by petition or by cross-bill, or by transfer in some way from the position of a defendant to that of a complainant, and asks for affirmative relief.    But this rule is subject to well-known exceptions; and principal among those exceptions is the case where a fund or property is in the control of the court to be administered by the court and distributed among those entitled to it in accordance with their respective interests, as those interests appear in the suit.    In creditor's suits, for example, when the estate of a deceased person is to be administered in equity, it is not necessary for persons who appear before the auditor of the court upon general notice to come in and prove their claims, to file any bill, cross-bill, petition, or pleading of any kind to entitle them to become parties to the suit, and to have thereafter all the rights of parties, although it is always proper in such cases to file a petition, or something in the nature of a petition.    So, likewise, in a suit for the foreclosure of a mortgage, if there are subsequent mortgagees who are made parties to the bill of complaint as defendants, it is not necessary, and it is not usual, that they should take affirmative action in order to entitle themselves to a participation in the proceeds of sale of the property, and numerous other illustrations might be cited.    It has never been the practice in this District, or elsewhere so far as we are advised, for persons holding or claiming mechanics' liens, who have

been·made defendants to a bill in equity filed by another or
other holders of a similar lien, to take affirmative action as
a prerequisite for their participation in the fund to be real-
ized by the suit.   If joinder of control over the prosecution
of the case is desired, such affirmative action is proper; but
no such action is required to justify participation in the re-
lief sought by the bill of complaint.   It is sufficient that
all the parties are before the court; and it is immaterial
whether they appear as· plaintiffs or as defendants.   See
Daniell's Chancery, Ch. V., Sec. 1; *Corcoran* v. *Ches. & Ohio
Canal Co.*, 94 U. S. 741.

3. Objection is made to the claim of the Capitol Hill
Brick Company on the ground, as alleged, that its notice of
lien was not filed in time.

The facts in regard to this point, as disclosed by the rec-
ord before us, are these: The houses, with reference to which
.the controversy arose, were finished, according to the alle-
gation of the bill of complaint, "on or about the first day
of July, A. D..1893.   Both in the answer of the brick com-
pany and in that of Mrs. Emack, this allegation was ad-
mitted to be true.   The notice of lien was not filed until
October 6, 1893, more than three months after the first day
of July, notwithstanding that the law requires that the no-
tice should be filed within three months after the comple-
tion of the building in order to make the lien effective.
But it will be noticed that neither the bill of complaint nor
the answers determine with precision the date of such com-
pletion; they simply aver that it was *about* the 1st of July,
A. D. 1893; and the precise time is thereby left to be more
accurately ascertained by the testimony of witnesses.   Such
testimony is not wanting in the case; and it is the testimony
of Charles G. Emack, the husband of the principal defend-
ant, Mrs. Marion Emack, and who was likewise her agent in
the whole transaction.   In his deposition, to be found in the
record, he says that the work on the houses was completed
"probably some time about the middle of July."   Even this

is not very definite; but it is amply sufficient to bring the date of the filing of the notice of lien within the prescribed period of three months after the completion of the building. We must hold, therefore, that the notice was filed in time.

4. Among the assignments of error is one to the effect that the decree appealed from is in substance a personal decree against the appellant, Mrs. Marion Emack, and that in such case no personal decree is authorized by law. But as the appellees have conceded upon the argument that no personal decree against Mrs. Emack was intended or could be rendered validly in the cause, this assignment of error is abandoned.

5. A question is made, which affects the accounting in the case, whether a provision in the contract between Mrs. Emack and the builders, Kerby & Brother, was for a penalty or for liquidated damages. The provision is in these words: "Should the contractors fail to finish the work at or before the time agreed upon (February 1, 1893), they shall pay to or allow the proprietor, by way of liquidated damages, the sum of five dollars *per diem* for each and every day thereafter the said works remain incomplete." The work remained incomplete, according to the testimony of Charles G. Emack, which seems to be accepted by all parties as correct, for about five and one-half months—that is, until about the middle of July, 1893; but Mrs. Emack has fixed upon a lesser period of one hundred and fifty days as the time for which she is entitled to the stipulated allowance; which for that time, and at the rate specified, amounts to $750. This sum she claims that she is entitled to deduct from the contract price payable by her for the buildings.

But with reference to this amount her husband and agent, Charles G. Emack, in his deposition already mentioned, testified as follows:

"There was a compromise of these penalties or forfeitures, whichever you call them, later on. It was agreed between

14 Ct. App.—14

Messrs. Munroe and Campbell (who, as already stated, undertook as the sureties of Kerby & Brother to complete the contract made by these latter with Mrs. Emack) and myself that we would divide the amount of the forfeitures, which was $750; that I would relinquish my claim to half of it and let (that) half of it go back into the fund."

We must presume that this "compromise" was made for a proper consideration; and that therefore the allowance claimed by the appellant for delay in the completion of the work, the amount of which is not specifically stated in her answer, is to be reduced from $750 to $375.

The court below, in its preliminary decree, mentioned the sum of $750 as the amount claimed in this regard, and disallowed it, and made no allowance whatever for damages for the delay of the contractors. The claim, of course, was not, and could not properly have been, taken into consideration, in the accounting before the auditor, in view of this preliminary ruling by the court.

In this action of the court we think there was error. The appellant should have been allowed to deduct from the money payable by her the sum of $375, the amount ultimately agreed upon as the proper compensation to her for the delay of the contractors.

It is said that courts of equity will not enforce forfeitures, and that here was a forfeiture, although it is called by the name of "liquidated damages." The books are full of discussions on the difference between penalties and liquidated damages in contracts providing for compensation to parties injured by default or failure of antagonistic parties to perform their agreements; and it must be said that the courts have frequently been astute in restricting by construction the scope of such provisions beyond the meaning and purpose of the parties in interest. The general rule on the subject, as administered by the courts of equity, is well stated in the American and English Encyclopædia of Law, Title, "Liquidated Damages," where the author of the article says:

"It may be stated as a rule of general application that a stipulation for the payment of a specified sum upon the non-performance of the contract in which it is contained, is to be treated as a penalty rather than as liquidated damages, if the intention of the parties as to its effect appears at all doubtful, or is of equivocal interpretation. It is also customary to consider such a stipulation as a penalty, in the absence of clear and convincing proof of a contrary intention by the parties at the time of the execution of the contract, where the covenant is certain and the damages for a breach thereof easily ascertainable, especially if the amount named is greatly out of proportion to the actual damage."

But the limitations of the rule, if we admit such to be the rule, are plain and palpable in the statement of the rule itself. If the parties have distinctly and by express terms contracted for stipulated damages, and not for a penalty; if the intention is not at all doubtful or the language used equivocal; if the damages for a breach of the contract are not easily ascertainable; if the damages specified as liquidated damages are in themselves not unreasonable, it is not apparent why we should not take the contract of parties to be what they themselves have stated it to be. It is perfectly competent in law for parties to stipulate for liquidated damages in the place of penalties, to compensate for the violation of the covenants contained in such contracts; and if they have done so in clear and unmistakable terms, at least the burden of proof should be upon him who alleges the contrary, and courts should not lightly distort the contract from that which it says to that which it might be thought they should have said.

What Sir George Jessel, Master of the Rolls, in the case of *Wallis* v. *Smith*, Law Rep. 21, Chancery Division, 243, 266, said upon the question is very appropriate here. He said: "I have always thought, and still think, that it is of the utmost importance as regards contracts between adults—persons not under disability, and at arm's length—that the

courts of law should maintain the performance of the con-
tracts according to the intention of the parties; that they
should not overrule any clearly expressed intention on the
ground that judges know the business of the people better
than the people know it themselves.　I am perfectly well
aware that there are exceptions, but they are exceptions of
a legislative character."

See, also, *Bagley* v. *Peddie,* 16 N. Y. 469; *Mason* v. *Callen-
der,* 2 Minn. 302; *Gotheal* v. *Talmage,* 9 N. Y. 551; *Chase* v.
*Allen,* 13 Gray, 42; *Hall* v. *Crowley,* 87 Mass. 304; *Folsom* v.
*McDonough,* 60 Mass. 208; *Warrell* v. *McClanaghan,* 5 Strob-
hart (S. Car.), 115.

The case of *Folsom* y. *McDonough,* 60 Mass. 208, just cited,
was very like the present case.　In it there was a provision
in a building contract that the contractor should pay to the
owner of the property a certain specified sum for each day
for which the work should remain unfinished after the time
limited in the contract for its completion.　And of the same
character also was the case of *Warrell* v. *McClanaghan,* 5
Strobhart, 115, excepting that the sum to be paid was for
each month instead of each day.　So, also, was the case of
*Hall* v. *Crowley,* 87 Mass. 304, where it was said by the court:

"The sum named is for doing one certain and specific
job of work within a prescribed time, and not for an omis-
sion to comply with divers separate and independent stipu-
lations of different degrees of importance, the failure to
perform each of which would occasion very different and
unequal amounts of damage to the defendant.　Nor is it to
be overlooked that the loss or injury which would accrue to
the owner by the non-completion of the houses seasonably,
according to the terms of the contract, would be difficult to
prove and still more difficult to estimate in money.　All
these circumstances indicate very clearly that the intent of
the parties was to insert in their agreement a fixed measure
of damages, and not to name a sum as a penalty merely."

Both upon reason and upon authority we think that,

when the parties in the case now before us provided in their contract for "liquidated damages" to be paid or allowed to the owner of the property in the event of the failure of the contractors to complete the houses within the time specified, they meant precisely what they expressly said; and the courts have no right to make any other or different contract for them. The provision in the contract is not unreasonable, harsh or oppressive. The amount stipulated to be paid does not appear to be greatly, if at all, in excess of a fair rental value of the premises upon the completion of the houses. And certainly if there is any class of persons in the community against whom it is necessary for others to guard themselves by provisions of this kind, it is the class of reckless, improvident and sometimes even dishonest builders in this District who have only too frequently involved in financial difficulty and vexatious litigation, not only the owners of property who have contracted with them, but also the honest mechanics and material men who have trusted too implicitly in their representations. The courts should strive to uphold rather than to overthrow such provisions.

Again, to the proposition that courts of equity will not enforce forfeitures, even if the provision in the present case should be regarded as a penalty, and not as liquidated damages, it may well be objected here that the appellant has not called upon the court to enforce anything, and that she is simply desirous not to be disturbed in the enjoyment of that which she has. She holds the money in her own hands wherewith to compensate herself for the default of the contractors; she has the legal right to hold it, and the legal right to pay herself therewith; and a court of equity is not authorized by any principle of equity or by any rule of law to reach into her purse and to compel her to forego this legal right, merely because it might not itself enforce the right, if called on by her as a complainant so to do. We have so held in the recent case of *Anderson* v. *Reid, ante,* p.

54, decided at this term. It might be different if the appellant herself were calling upon the court for relief in connection with her contract.

But whether the provision in question is for a penalty or for liquidated damages, the appellant is entitled in any event to compensation for the damage sustained by her through the failure of the contractors to perform their contract within the specified time. She was allowed no compensation whatever in the decrees of the court below, and no opportunity to prove the damage. In this we think that, under any aspect of the case, there was plain error. We think that the appellant should have been allowed to deduct from the money in her hands the sum of $375, as liquidated damages.

6. The remaining assignments of error have reference to the mode of the statement of the account by the auditor of the court.

Remaining in the hands of the appellant there is a balance of the amount stipulated to be paid for the construction of the houses in controversy, amounting, according to the auditor's statement, to $1,775.52. This should be diminished by the sum of $375, to be allowed to the appellant for her liquidated damages before mentioned, and also by the amount of the costs of this appeal, not yet taxed, and which are to be allowed to her out of the fund in her hands. The outstanding liens or claims chargeable against this fund, according to the auditor's report and at the time of that report, including both principal and interest, amounted to the aggregate sum of $3,217.76. Included in this aggregate sum were certain claims paid or satisfied by the appellant, and stated by the auditor to amount to $762.15. There were seven of these claims; five the appellant had paid in full; two she had settled for fifty cents on the dollar. The face amount of these last two was $386; she settled them for $193. As the aggregate amount of the claims was in excess of the fund from which they were to be paid, it was

necessary to *pro rate* them. In determining the *pro rata,* credit was given to the appellant for the two claims referred to only to the extent of $193 which she had paid for them. Clearly this was error; and it does not appear to be seriously contended on behalf of the appellees that it was not error. Their contention is that she was not entitled to be taken into account at all in the distribution or in the arrangement of the ratio of distribution, on the ground that her payment of all these claims was wrongful and was in violation of the rights of the other claimants. But we see nothing wrongful in such payment, nothing for which she should be visited with the forfeiture of a plain legal right. She was entitled to pay whom she pleased; but she paid at her own risk of possible loss in the event that the fund in hand was insufficient to satisfy all who had just claims upon it, as it proved to be. When she paid, she stood, in reference to this fund, in the place of the original claimant; and in the accounting she would be entitled to reimbursement only to the same extent to which the original claimant would be entitled to payment in the distribution. Nor, on the other hand, would she be entitled to speculate in these claims and to make a profit from them. We think, therefore, that in order to ascertain the ratio at which the fund should be apportioned among the several lien holders, all the claims should be taken at their original face value, which would make those held by the appellant to amount to $955.15, instead of $762.15. And upon this basis the account should be restated.

It ought not to be difficult for the parties to agree between themselves as to how the account should now stand. But if they can not agree thereon, it will be proper to refer the cause again to the auditor, with directions to state the account upon the basis in this opinion indicated.

It follows from what we have said that the decree of the Supreme Court of the District of Columbia rendered in this cause must be reversed, with costs, which are to be reimbursed

to the appellant out of the fund in her hands; and that the cause should be remanded to that court, with directions to vacate both the preliminary decree of March 1, 1897, and the final decree of June 9, 1898, and for further proceedings in the cause in accordance with this opinion. *And it is so ordered.*