## COTHEAL *against* TALMAGE.

Where the damages resulting from the breach of an agreement are in their nature entirely indefinite and uncertain, and the parties have mentioned a specific sum as liquidated damages, such sum will be regarded as damages, and not as a penalty, unless the amount be greatly disproportioned to any probable estimate of the actual damages.

The sum so fixed will be considered as damages, although by the terms of the agreement it is to be paid on the breach of any one of several stipulations of different degrees of importance, when the damages arising from the breach of each of them would be in their nature indefinite.

Where the provision for the payment of a fixed sum on the breach of an agreement is found in the *condition* of a *penal bond,* the presumption is that the sum named in the condition was not designed as a penalty.

IN December, 1848, the plaintiff entered into an agree ment with a company of persons, of whom G. T. De Forest was one, by which, in consideration of the sum of $100 paid to him by each of the individuals composing the company, the plaintiff agreed to furnish them with a cabin passage to San Francisco, with subsistence for a year, and with the articles and tools necessary for carrying on mining operations in California. On their part the company severally covenanted with the plaintiff that they would diligently devote themselves to obtaining gold and other precious metals, in the manner and under the superintendence and regulations specified in the agreement, a

certain proportion of the earnings of each being agreed to be paid to the plaintiff; and that they would severally execute a bond with an approved surety or sureties to the plaintiff, conditioned for the payment to him, by the person executing the agreement and the bond, in case such person should fail to keep, or should break the agreement, of " the sum of five hundred dollars, as liquidated damages."

In pursuance of this agreement, and at the same time, De Forest, with the defendant as his surety, executed to the plaintiff a bond, commencing in the usual form, with a penalty of $1000. Then followed, after a reference in general terms to the agreement, this further recital and condition :

" And whereas it is agreed on the part of the above bounden Goyn T. De Forest, that in case he should fail to keep, or should break said agreement, there should be paid to said David Cotheal the sum of five hundred dollars, as liquidated damages ; now, therefore, the condition of this obligation is such, that if the above bounden Goyn T. De Forest and Daniel Talmage shall well and truly pay, or cause to be paid to said David Cotheal, his certain attorney, executors, administrators or assigns, upon the breach of said agreement as aforesaid, the just and full sum of five hundred dollars, without any fraud or other delay, then this obligation to be void, or else to remain in full force and virtue."

This action was commenced in the New-York common pleas, in December, 1849. The complaint stated the agreement and bond, and alleged a breach of the agreement on the part of De Forest, in leaving the mineral district and refusing to devote himself diligently and exclusively to obtaining gold and other precious metals, pursuant to the articles, and claimed as damages the $500 mentioned in the instruments referred to.

The defendant, in the fourth clause of his answer, denies that De Forest ever broke the alleged agreement, or refused

to perform any covenant mentioned in the complaint, or left the mineral district referred to, or failed or omitted to devote himself diligently and exclusively to obtaining gold or other precious metals pursuant to the articles, " further or otherwise than as hereinafter stated." The sixth clause alleges specifically the performance of the agreement by De Forest for a certain length of time, and then states that after he had been diligently and exclusively devoting himself to the obtaining of gold and precious metals, in pursuance of the terms of the agreement, for about seven weeks, the plaintiff, about October 11, 1849, by his own acts and procurement, and those of certain agents and servants, persuaded and induced De Forest and the other parties to the agreement to break up and abandon the enterprise. These allegations are denied by the reply.

On the trial, before Judge INGRAHAM and a jury, in June, 1851, it was held that the breach of the agreement was admitted on the pleadings, and no proof thereof was required from the plaintiff. A verdict was given for the whole amount claimed; and judgment upon the verdict was affirmed by the court at general term. The defendant appealed to this court.

*N. Hill, Jr.*, for the appellant.

*A. Thompson* for the respondent.

RUGGLES, J. The only question necessary to be considered in this case is, whether the sum of $500 mentioned in the condition of the defendant's bond is a penalty to cover such damages as might be proved on the trial, or an amount liquidated and settled between the parties as the compensation to be paid upon the breach of the contract. The ablest judges have declared that they felt themselves embarrassed in ascertaining the principle on which the decisions upon questions like the present were founded. (2

*Bos. & Pul.*, 350.) They have said that the law relative to liquidated damages has always been in a state of great uncertainty; and that this has been occasioned by judges endeavoring to make better contracts for parties than they have made for themselves. ( *Crisbee* v. *Bolton*, 3 *Car. & P.*, 240.) BEST, Ch. J., says in that case, that parties to contracts, from knowing exactly their own situation and objects, can better appreciate the consequences of their failing to obtain those objects than either judges or juries; and that if a contract clearly state what shall be paid by the party who breaks it to the party to whose prejudice it is broken the verdict in an action for the breach should be for the stipulated sum; that a court of justice has no more authority to put a different construction on the part of an instrument ascertaining the amount of damages than it has to decide contrary to any other of its clauses. It is conceded by all that courts are to be governed by the intention of the parties, to be gathered from the language of the contract and from the nature and circumstances of the case. Where there is a contract to pay money, the damages for its breach are fixed and liquidated by law, and require no liquidation by the parties. An agreement to pay greater damages is therefore regarded as a penalty. But when the damages resulting from the breach are uncertain in amount, as they are in all other cases, the parties have the right to say how much shall be paid by way of compensation to the party injured; and when they have settled that compensation, neither a court of law nor a court of equity will diminish its amount unless it be so grossly disproportionate to the actual injury that a man would start at the bare mention of it. (2 *Bos. & Pul.*; 351.) Where there is a manifest difficulty in ascertaining damages arising from the breach of the contract, and the fair conclusion is that the amount is specified and agreed on for the purpose of saving the expense or avoiding the difficulty of proving the actual damages, the parties should be held to their bargain; and especially where

the amount fixed and liquidated is not far beyond what
might probably be expected to arise from a breach of the
contract.   I am of opinion that the present is such a case.
The parties had agreed to coöperate in a hazardous adven-
ture, to be executed at a great distance from the place where
the contract was made, in a country unsettled and without
a regular government.   The plaintiff was to make large
advances for the transportation and supply of the company,
of which De Forest (for whom the defendant was surety)
was one.   The success of the adventure depended on a strict
and faithful performance of the contract by those who were
engaged in it.   The loss occasioned by the desertion or dis-
obedience of any one of the company could not be supplied
without great expense and delay, if at all.   Great gains
were undoubtedly expected by all parties from the enter-
prise; and great loss to the plaintiff was certain from its
failure.   United action, subordination and obedience were
indispensable to its success.   The temptations to desertion
and disobedience in California were many and strong.   We
know from the history of the country that military and
naval subordination were broken up by those temptations.
Without stern and stringent provisions in the articles which
bound the company, no reasonable expectation could be
entertained that they would remain united.   It was neces-
sary for the interest of each that all should be bound by
such provisions.   From the nature and object of the adven-
ture, the amount of gain by a strict performance of the
contract could not be foretold, and the amount of loss by
a breach could not be ascertained by proof; and if it had
been susceptible of proof in that country, the expense and
difficulty of obtaining it here would have rendered a con-
tract to pay unliquidated damages of no value.   The liqui-
dation of the damages by contract between the parties was
therefore prudent and reasonable on all sides.   Without
such a provision the plaintiff would have had no real or
substantial security for his advances; and without it the

contract would probably never have been made. There is nothing in the case to authorize us to say that the probable damages were unreasonably estimated at $500. It is probably less than all parties expected the plaintiff would gain by the adventure from the services of each individual, provided the enterprise was faithfully prosecuted by all; and whether the payment of this sum by each delinquent of the company will indemnify him for his loss, we have no means of ascertaining from the case. Under these circumstances, it seems to me that the intention of the parties to the bond was to bind themselves to the payment of the sum mentioned in its condition in case of a breach of the agreement.

But it is contended that because the contract referred to in the bond bound the defendant to do several things of different degrees of importance, and the sum of $500 was made payable for the non-performance of any or either, it must be a penalty, and not liquidated damages. This doctrine, in the cases in which it is asserted, is traced to the cases of *Astley* v. *Weldon* (2 *Bos. & Pul.*, 346) and *Kemble* v. *Farren* (6 *Bing.*, 141). But I do not understand either of these cases as establishing any such rule. The principle to be deduced from them is, that where a party agrees to do several things, *one of which is to pay a sum of money*, and in case of a failure to perform any or either of the stipulations, agrees to pay a larger sum as liquidated damages, the larger sum is to be regarded in the nature of a penalty; and, being a penalty in regard to one of the stipulations to be performed, is a penalty as to all. In *Kemble* v. *Farren*, TINDALL, Ch. J., says, that if the clause fixing the sum for liquidated damages "had been limited to breaches which were of an uncertain nature and amount, we should have thought it would have the effect of ascertaining the damages upon any such breach;" thus rejecting the doctrine contended for by the defendant's counsel in the present case. It is true that the doctrine

thus contended for has been adopted in some English and in several American cases; hastily, I should think, and without a careful examination of the cases from which it is supposed to be derived. But if it should be considered as having any solid foundation in principle, it should be applied only in subordination to the general rule, which requires the courts in these, as in all other cases, to carry into effect the true intent of the parties. It should never be applied to cases like the present, where the amount of damages is uncertain from the nature of the subject itself; and incapable of proof, not only from that uncertainty, but from the circumstances of the case already stated, and where for these reasons there was a necessity for ascertaining them by estimate, by the parties in their contract. The only plausible ground for withholding the doctrine in any case is, that the party might be made responsible for the whole amount of damages for the breach of an unimportant part of his contract, and so be made to pay a sum by way of damages grossly disproportionate to the injury sustained by the other party. Without undertaking to deny that this rule may be properly applied to some cases, I cannot think it ought to be applied to the present. The injustice which it professes to avoid is no greater than that which is tolerated in many other cases for the purpose of enforcing a faithful performance of contracts. A laborer, for instance, who agrees to work by the month or by the year, his wages to be paid at the end of the term, loses by our law the fruits of his toil, if he fails in his last day's work; and a farmer who contracts to deliver to a merchant one hundred tons of hay, for which he is to be paid when the whole is delivered, and delivers ninety-nine tons, but fails in delivering the last load, to make up the quantity, can recover for no part of what he has delivered. If the rigor and severity of this rule can be justified, we shall have no difficulty in reconciling our minds to the propriety of holding that the surety for De Forest is responsible in the

specified amount of damages for the non-performance of his contract, and in declining to relieve him from the consequences of a breach to which he made himself liable by his bond.

Again, this is an action upon a bond in the penalty of $1000, conditioned to pay $500 in a certain event therein mentioned. In *Fletcher* v. *Dyche* (2 *Term R.*, 32), BULLER, J., says: " Where there is a penalty in a bond, it is strange that the sum mentioned in the condition should be called a penalty." And Lord ELDON, in *Astley* v. *Weldon*, says it would have been absurd to say that the sum mentioned in the condition of a bond and secured by a penalty should itself be regarded as a penal sum. ( *See Smith* v. *Smith*, 4 *Wend.*, 468.) Whether we look to the form of the defendant's contract, to the nature of his engagement, or to the circumstances in relation to which it was made, we find the intention of the parties was that the sum expressed in the condition of the bond should be paid for a breach of De Forest's contract. The jury having found it broken, we think the judgment of the court below should be affirmed.

ALLEN, J., concurred in the above opinion, but thought a new trial should be granted, on the ground that the court below erred in holding that the breach was admitted.

All the other judges concurring,

Judgment affirmed.