J. WINSLOW JONES AND COMPANY, (Limited,)

*vs.*

PETER W. BINFORD.

Cumberland. Opinion February 22, 1883.

### Contract.

J and B agreed in writing, that B should "the present season plant and culti- vate with sweet corn suitable for packing, . . . [ four acres ] and when the corn is in proper condition for packing, he will from time to time, upon reasonable notice from J, gather and deliver to J, as wanted by J, all the corn raised on said land," at a certain factory; and J agreed to pay B "for all his corn so received," at a price named; and B further agreed "as fixed and liquidated damages," to pay J a certain price "for each and every canister of corn which shall be raised or grown" on the four acres, "and

which shall be sold to and be taken by any other person in violation of this contract or in diminution of the quantities so contracted to be delivered." *Held*;

1. A proper construction of the contract in suit, imposes upon J the obligation to pay the stipulated price for all the corn raised by B and delivered in accordance with the contract.

2. That when so delivered it is "received" by J without any act on his part.

3. That the reasonable notice, named in the contract, is for the benefit of J, and he cannot neglect to give it to the injury of B; and if neglected, it does not prevent nor excuse J from delivering the corn when in proper condition for packing.

4. That the forfeiture is liquidated damages.

ON REPORT from the superior court.

Assumpsit upon the following contract :

" Contract for Sweet Corn Season of 1881.

" It is hereby agreed between J. Winslow Jones and Company, (limited) of the one part and the other subscribers hereto, each for himself, that each of said subscribers will the present season plant and cultivate with sweet corn suitable for packing, the quantity of land hereunto set against his name, and when the corn is in proper condition for packing, he will from time to time, upon reasonable notice from said company, gather and deliver to said company as wanted by them all the corn raised on said land, at their factory in Hiram, the same to be there delivered in the husks in the usual and customary manner upon the same morning it is gathered.

" And said company agrees with each of said subscribers to pay him for all his corn so received, two and one-half cents per canister, which shall be packed in merchantable order with corn of such party, to be paid for in January, 1882.

" And each of said subscribers hereby agree as fixed and liquidated damages, to pay to said J. Winslow Jones and company, (limited) two and one-half cents per canister for each and every canister of corn which shall be raised by or grown on the farm of such subscribers, and which shall be sold to and be taken by any other person in violation of this contract, or in diminution of the quantities so contracted to be delivered to said company.

"It is furthermore agreed, that instead of the cans being counted, the corn shall be weighed as soon as cut off, and one pound and eleven ounces be reckoned equal to one can.

J. Winslow Jones and Company, (limited).

By J. W. Jones,

Managing Director."

| " Date. | Names. | Residence. | Acres. |
|---------|--------|------------|--------|
| | P. W. Binford. | W. Baldwin. | 4 " |

The writ was dated September 28, 1881.

The plea was the general issue.

Other material facts stated in the opinion.

*C. P. Mattocks*, for the plaintiffs, cited: *Babcock* v. *Wilson*, 17 Maine, 372: *Bell* v. *Woodman*, 60 Maine, 465; *Osgood* v. *Davis*, 18 Maine, 146; *Hancock* v. *Fairfield*, 30 Maine, 299.

*Drummond and Drummond*, for the defendant.

The so-called contract is a *nudum pactum*. The plaintiffs only agreed to pay for the corn "received" by them, but they do not agree to receive. A promise is a good consideration for a promise, but it must be absolute on each side. Chitty, Contr. 52.

The contract is void as being against the policy of the law. It is an unconscionable contract. It provides for the forfeiture of the whole value of the corn in case the defendant sells the corn to anybody else. He may fail to keep his contract in any other respect — not plant, or plant and use the corn himself, or let it ripen — and only be liable for actual damages. *James* v. *Morgan*, 1 Lev. 111; *Thomberough* v. *Whiteacre*, 2 Ld. Raym. 1164.

This clause of the contract is in general restraint of trade and void for that reason. 2 Chit. Contr. 983, note; *Alger* v. *Thatcher*, 19 Pick. 51.

This is not a large case in itself, but it is one of great importance to farmers and packers of corn.

DANFORTH, J. A breach of the contract in suit is not denied; but the defence is its invalidity for want of consideration and

illegality. That one promise is a good consideration for another is conceded. But it is claimed that here there is virtually no promise on the part of the plaintiff; that the contract is so cunningly worded that while there is in it a distinct, unqualified promise to pay for the corn "so received," there is under it no obligation to receive any. This depends upon the meaning of the words "so received," and that is to be ascertained by consulting the previous clause, which imposes the obligation resting upon the defendant.

In that clause the defendant agrees to plant and cultivate four acres of sweet corn and when the corn is in proper condition for packing, he will upon proper notice deliver to the plaintiffs as wanted all the corn so raised, "at their factory in Hiram." In the next clause, the plaintiffs agree to pay a price specified for all the corn "so received." The necessary inference is that the delivery provided for is the reception referred to. The one is the same as the other, and when the delivery is completed, so is the reception. As the delivery is incumbent upon the defendant, he has only to perform his duty in that respect, and the obligation on the part of the plaintiffs to pay follows necessarily. The clause is the same in effect and imposes the same obligation upon the plaintiffs as though it was a promise to pay for all the corn so delivered.

It is, however, further objected that the corn is to be delivered upon reasonable notice from the company and "as wanted by them," and that the company may avoid all liability by neglecting to give any notice, or by making other arrangements so that it will not want the corn. But the company accepted and signed the contract. It provides for the production and delivery of the corn. The very object and purpose of it is to supply a contemplated want, and the law would hardly authorize a party so contracting, to say to the other who had fulfilled his part of the obligation, "I have changed my mind and do not now want the corn and shall give no notice for its delivery." A party attempting such a wrong would be likely to find his attempt a failure upon the familiar principles of estoppel.

But he would find a still more serious difficulty in his way. The delivery rests with the other party. It is to be made when the corn is fit for packing. So far it is absolute and unqualified. The notice applies to that time and that only. It is to be given for the benefit of the receiver and not of the one who is to deliver. If the party receiving chooses to waive it, it does not change or control the right to deliver within the specified period. Then the obligation to deliver is not conditional upon its being wanted; that is taken for granted. The language of the contract is not to deliver *if* wanted, but *as* wanted, that is, as it can be used during the time it is fit for packing.

The only fair construction which can be given to this contract and the one which expresses the meaning of the parties better than any other, is that the defendant undertakes to plant and cultivate a specified quantity of land to sweet corn and deliver what is so raised at the plaintiffs' factory when fit for packing, when notified if reasonable notice is given, or if no reasonable notice is given, he may still deliver it during the time specified, and for all the corn so raised and delivered, the plaintiffs must pay the stipulated price. Thus it is a simple contract for the production, sale and purchase of personal property. This construction relieves it from objection on the ground of any alleged illegality, as well as from want of consideration. The clause providing for damages in case of non-fulfillment must stand or fall upon its own merits, and though its proper construction may be, to some extent, controlled by the other provisions, yet it can not affect their validity.

The proper construction and the validity of the clause relating to damages is of much more doubt and difficulty. It is evident that if we are to construe it as simply a prohibition to sell corn to any other person, and a penalty attached for doing so, it would be against the policy of the law and void as in restraint of trade and tending to a monopoly. *Alger* v. *Thatcher*, 19 Pick. 51.

But this of itself is not a contract. It is simply an appendage to one. The contract is not in restraint of, but rather an encouragement to trade. There is sufficient in the provisions of the contract

and in the evidence reported to show that the plaintiffs were in the possession of a factory, with the necessary fixtures for canning corn; that corn fit for this purpose could not be obtained in the open market in sufficient quantities to authorize the necessary expense in building, machinery and preparations required to carry on this business, but that to make it a prudent and safe business resort must be had to contracts like the one under consideration. It is equally true that without these factories, there would be no sufficient market to warrant the raising of this kind of corn to any great extent, and no owner of land could prudently or safely devote it to any great extent to this purpose unless he first had a reasonable assurance of a market and such as would not be likely to be obtained except by contract. It is evident that these contracts are for the mutual interest of each party; on the one hand creating a market where none would otherwise exist and on the other producing a supply when otherwise none could be had. This has no tendency to prevent competition, for none could exist before a market is created, while the whole field for raising, selling or canning corn is open as broadly to the world as though no contracts were made, and public policy does not, nor does a wholesome competition require, that persons should be at liberty to sell their merchandize more than once.

An examination of this clause shows that the forfeiture is not for the sale of the corn raised by the defendant, to other persons, but for that which is sold "in violation of this contract, or in diminution of the quantities so contracted to be delivered to said company." The violation of the contract by a neglect to plant, the conversion to his own use, or the gratuitous supply of friends, is left to the general provisions of law. The forfeiture applies only where there is the greatest danger of a breach, and when the breach must necessarily be wilful on the part of the defendant with the means of compliance in his own hands. Surely of this, it is not for the defendant to complain.

It is evident, also, that this forfeiture must be considered as liquidated damages and not as a penalty. The defendant has so said, explicitly and without any qualification. True, this is not conclusive. Though this part of the contract, like all the others,

is to be construed so as to carry out the intention of the parties, yet to ascertain that intention we are to examine the words used, its nature, the purpose to be accomplished, and all its parts. For this purpose the statement of the parties, though not conclusive, is strong evidence and sufficient unless overcome by other tests which are to be applied. In this case the tests to be applied corroborate and confirm this statement rather than weaken it. One of the most usual and certain tests is, where otherwise the damages "would be wholly uncertain, and incapable, or very difficult of being ascertained except by mere conjecture." Another is, "where the agreement is in the alternative to do some particular thing or pay a sum of money" or the sum "is payable for one breach of contract." Sedgwick on Dam. 5th ed. 478, 481; 3 Parsons on Cont. 159; *Dwinel* v. *Brown*, 54 Maine, 468; *Lynde* v. *Thompson*, 2 Allen, 456; *Hall* v. *Crowley*, 5 *Id.* 304; *Chase* v. *Allen*, 13 Gray, 42; *Higginson* v. *Weld*, 14 *Id.* 165.

In this case we find all the tests clearly defined and emphatic. The damages caused by a breach must necessarily be uncertain and incapable of being ascertained. The plaintiffs could not go into a market and make up their loss. The profits could not be ascertained and the amount would be too uncertain and contingent to admit of proof; and it would be the same as to the loss, as the preparation for using the corn must be made in advance of its use, and involves so great a variety of matters that the loss arising from the failure of any particular contract would not be susceptible of satisfactory proof. Thus it is evident that the parties themselves could come to a very much more satisfactory conclusion as to the damages than would be possible for a jury. Here, too, the agreement is in the alternative, to deliver the corn or to pay a definite sum of money, wherein the defendant having deliberately elected not to perform one of the alternatives cannot now refuse to perform the other. The sum payable is for one breach, single in itself, though modified as to extent.

Nor can the forfeiture in this view be considered excessive or unjust. It is graduated so as to compare with the extent of the breach, and though the forfeiture equals the amount which would

have been paid for the corn, yet it by no means follows that it was the full value of the corn, for that has not been and probably cannot be shown. The price to be paid may have been a full compensation for all the defendant promised to do and yet the non-delivery may have been a greater loss to the plaintiffs than the compensation received. It may be for aught that appears, that the defendant has found more profit in the violation, than in the keeping of his contract. It is certain that for some reason he has elected the former rather than the latter, and the forfeiture does not appear to have been sufficient to have accomplished what was evidently intended, the prevention of that competition which is the result of rivalry or ill will and results in injuries inflicted rather than in honest dealing and a wholesome increase of business.

The defendant delivered to other parties one thousand eight hundred and eighty-one cans of twenty-six ounces each, equal to one thousand eight hundred and eleven cans of the size to be delivered the plaintiffs. Three-fourths of this grew upon the six acre lot, four acres of which were selected for the plaintiffs. It is a fair inference that the four acres produced two-thirds as much as the six. This would leave one-half the whole or nine hundred and five cans which the defendant should have delivered but did not. This number at two and one-half cents each makes twenty-two dollars and sixty-two cents.

> *Judgment for the plaintiffs for twenty-two dollars and sixty-two cents and interest from date of writ.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and SYMONDS, JJ., concurred.