WENDELL J. CURTIS, as Assignee for the Benefit of Creditors of SIDNEY B. ROBY, Respondent, *v.* FREDERICK W. VAN BERGH et al., Appellants.

1. CONTRACTS — LIQUIDATED DAMAGES. Where the language of a provision specifying the amount of damages to be paid in case of the breach of the contract is clear and explicit to that effect, the amount is to be deemed liquidated damages, when the actual damages contemplated at the time the agreement was made are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss.

2. LIQUIDATED DAMAGES CONTEMPLATED WHERE ACTUAL DAMAGES ARE DIFFICULT OF ASCERTAINMENT. Where manufacturers, engaged in a growing and prosperous business, requiring more room and additional machinery, being compelled to move by a certain date, contract with another to erect a suitable building and to have it ready for their occupancy on that date, and to let it to them for a term of years, with a provision that, in case of failure to have the building completed by the specified date, the lessor shall forfeit and pay the sum of fifty dollars for each day's failure, and both parties knew that failure to have the building ready would naturally result in the loss of business, and either in the temporary occupation of another building or a forcible removal through legal process, a case is presented where it must be presumed that the parties stipulated for a fixed sum, from the difficulty of ascertaining any exact amount of damages which would be sustained by a breach of the agreement.

3. DAMAGES NOT DISPROPORTIONATE TO PROBABLE LOSS. It cannot be said, as matter of law, that fifty dollars a day for the absolute suspension of a prosperous manufacturing business for a few days, at the busiest season of the year, accompanied by a removal to other quarters or a forcible removal to the street, is so disproportionate to the probable loss arising from prevention of occupancy under a lease at the rate of $2,100 a year as to compel the sum expressed as liquidated damages to be regarded as a penalty.

*Curtis* v. *Van Bergh*, 28 App. Div. 622, reversed.

(Argued October 24, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 4, 1898, affirming a judgment of the Monroe County Court, entered upon a verdict directed in favor of the plaintiff.

This action was brought to recover rent reserved for the use of a certain building in the city of Rochester under a written contract and lease. The defendants pleaded a counterclaim arising out of the following facts, which might have been found by the jury upon the trial: For some years prior to January 23rd, 1896, the defendants had been engaged in the manufacture of plated silverware in the Butts building in said city, employing a large number of men and doing a general business as well as furnishing goods upon contract. They were prosperous and finally outgrew their old quarters. As their lease was to expire on the 1st of July, 1896, in order to meet the rapid growth of their business, they entered into a contract with the plaintiff's assignor on the 23rd of January, 1896, whereby he agreed to erect and complete a building according to certain plans and specifications, already prepared, and have it ready for occupancy on or before July 1st, 1896, and to let the same to the defendants with steam heat and power for the term of five years from that day, with the privilege of five years more, at the rent reserved of $2,100 a year, which the defendants agreed to pay during the first period named.

Said agreement contained, among other covenants on the part of the plaintiff's assignor, the following: " In case the said party of the first part shall be unable for any reason to erect said building according to the plans and specifications hereinbefore referred to and to have the same completed on or before the first day of July, 1896, then and in that case said party of the first part shall pay to the said parties of the second part the sum of $50 for each day after July 1st, 1896, that the same shall not be completed, as fixed, settled and liquidated damages of the parties of the second part which they will sustain by reason of the failure of said party of the first part to complete said building at the time hereinbefore specified."

The plaintiff's assignor did not complete the building for defendants' full occupation until August 3rd, although a few days earlier they began to move into the basement, and they

did not learn that they could not have the premises at the time agreed upon until the 23rd of June. They were accustomed to make goods in the summer for their fall and holiday trade and to send out their travelers about the middle of August. They relied upon the additional room and new machinery to get their work out in July, but were unable to do so. Owing to the failure to get into the new building they could not make the goods required by their business or even furnish samples to their agents, and the result was a loss of business instead of an increase, as was expected, on account of the additional facilities. They discharged some of their men and did not begin to make holiday goods until August 15th. The wages account ran down from an average of $350 a week in June to about $165 in July. They tried to get more room in the old building, but could not do so, although they finally succeeded in securing the use of their old quarters for the month of July. The new premises contained four times as much room as the old, and with the new machinery, which they ordered in reliance upon the contract, had three or four times the manufacturing capacity of the old. If the building had been ready on the first of July they could have moved in two days, but as it was, they had to move, at an increased expense, small parcels of their machinery and effects at a time, as the partial completion of the building made room for it. The contract required an elevator with a capacity of 2,500 lbs. for the exclusive use of defendants, but the elevator was not ready until the middle of August, so that they were compelled to hoist their machinery by ropes. The defendants offered on the trial to show a large increase of business during every month of 1896 over the corresponding month of 1895, except July and August, when there was a loss, but the evidence was excluded upon the objection of the plaintiff, and the defendants excepted.

At the close of the evidence the counsel for the plaintiff moved for the direction of a verdict in his favor for the amount of the rent claimed. The counsel for the defendants

7

asked to go to the jury on the whole case, " on the intention of the parties whether they intended to liquidate the damages," and " on the question as to whether or not the damage sustained by these people is out of all due proportion to the liquidated damages stated in the contract." The trial court refused to submit the case to the jury and directed a verdict in favor of the plaintiff, the defendants excepting separately to each ruling, and from the judgment of affirmance rendered by the Appellate Division they have appealed to this court.

*C. C. Werner* for appellants. Liquidated damages were properly provided for, the actual damages being problematical and uncertain. (*Jones* v. *Binford*, 74 Me. 445; *Chase* v. *Allen*, 13 Gray, 42; *Lind* v. *Thompson*, 2 Allen, 456; *Bagley* v. *Peddie*, 5 Sandf. 192; *Kemp* v. *K. I. Co.*, 69 N. Y. 45; *Little* v. *Banks*, 85 N. Y. 258; *Holmes* v. *Holmes*, 12 Barb. 137; *Smith* v. *Smith*, 4 Wend. 468; *Tode* v. *Wolff*, 22 N. Y. S. R. 818; *Breck* v. *Ringler*, 36 N. Y. S. R. 617.) The language of the parties evinces a clear and undoubted intention to fix the sum mentioned as liquidated damages. (*Clement* v. *Cash*, 21 N. Y. 253; *Cotheal* v. *Talmage*, 9 N. Y. 551; *Smith* v. *Smith*, 4 Wend. 468; *Brewster* v. *Edgerly*, 13 N. H. 275; *Lind* v. *Thompson*, 2 Allen, 456; *Dunlop* v. *Gregory*, 10 N. Y. 241.) It was proper for the parties to liquidate damages for a delay in the performance of this contract, and the delay was not so prolonged as to make the damages provided for a penalty. (*Ward* v. *H. R. B. Co.*, 125 N. Y. 230; *Fletcher* v. *Dyche*, 2 T. R. 32; *Morrell* v. *McClinaghan*, 5 Strob. 115; *Hall* v. *Crowley*, 5 Allen, 304; *Curtis* v. *Brewster*, 17 Pick. 513; *Farnham* v. *Pollard*, 2 Hall, 167; *Bettis* v. *Bloomer*, 21 How. Pr. 317; *O'Donnell* v. *Rosenberg*, 14 Abb. Pr. [N. S.] 59; *Lincoln* v. *L. R. G. Co.*, 56 Ark. 405.) The fact that the defendants, after the making of the contract, characterize the sum to be paid as a " penalty," does not change the character of the contract. (*Ward* v. *H. R. B. Co.*, 125 N. Y. 230.)

*Nathaniel Foote* for respondent.   The court correctly held that the sum of fifty dollars per day named in the contract as damages for delay in completing the building was in the nature of a penalty.  (*Dodds* v. *Hakes*, 114 N. Y. 260 ; *Ward* v. *H. R. B. Co.*, 125 N. Y. 230 ; *Spencer* v. *Tilden*, 5 Cow. 144 ; *Bagley* v. *Peddie*, 5 Sandf. 192 ; *Beale* v. *Hayes*, 5 Sandf. 640 ; *Colwell* v. *Lawrence*, 38 N. Y. 71 ; *Dakin* v. *Williams*, 17 Wend. 447 ; 22 Wend. 201 ; *McCann* v. *City of Albany*, 11 App. Div. 378 ; *Clements* v. *Railroad Co.*, 132 Penn. St. 445 ; *G. M. Co.* v. *Camp*, 65 Fed. Rep. 794.)

VANN, J.   The question presented by this appeal is whether the sum which the plaintiff's assignor promised to pay the defendants for each day's delay in completing the building, after expiration of the period stipulated, is in the nature of a penalty or of liquidated damages.   This question depends upon the intention of the parties, which is to be gathered from the language used in making the contract, read in the light of the circumstances surrounding them at the time. (*Little* v. *Banks*, 85 N. Y. 258, 266 ; *Kemp* v. *Knickerbocker Ice Co.*, 69 N. Y. 45, 58 ; *Colwell* v. *Lawrence*, 38 N. Y. 71, 74.)   The words of the contract are that the sum of fifty dollars shall be paid by the plaintiff's assignor to the defendants for each day, after the date named for performance, " as fixed, settled and liquidated damages " which the defendants " will sustain by reason of the failure   *   *   *   to complete said building " within the time specified.

If this language is given its ordinary meaning the parties have not only defined the sum promised to be paid, as liquidated damages, but have expressly covenanted that it is the amount of damage which the defendants would sustain in consequence of the delay, thus limiting recovery to the sum named, even if the actual damages should greatly exceed it.

The plaintiff, however, contends that the language of the agreement is not conclusive, and that these words should not be given their ordinary meaning, because the *per diem* payment is so excessive as to shock one's sense of justice and to

warrant the inference that the parties could not have intended what they said, because it would be unreasonable. It is insisted that as the rent reserved was but $5.75 per day, the sum of fifty dollars for each day's delay is so out of proportion to the probable loss, as to bring the contract within that class of cases which hold that where the sum agreed to be paid is so great as to be unconscionable it will be regarded as a penalty, even if the parties have expressly declared their intention to be otherwise. (*Kemble* v. *Farren,* 6 Bing. 141; *Jackson* v. *Baker,* 2 Edw. Ch. 471; *Spencer* v. *Tilden,* 5 Cow. 144; *Niver* v. *Rossman,* 18 Barb. 50; *Mott* v. *Mott,* 11 Barb. 134; *Beale* v. *Hayes,* 5 Sandf. 640.)

These authorities show that the courts have struggled hard against the apparent intention of the parties, in order to relieve the one in default from an improvident bargain. It is, however, the law of this state, as settled by this court, that where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual damages contemplated at the time the agreement was made " are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss." ( *Ward* v. *Hudson River Building Co.,* 125 N. Y. 230; *Little* v. *Banks,* 85 N. Y. 258; *Kemp* v. *Knickerbocker Ice Co.,* 69 N. Y. 45, 57; *Clement* v. *Cash,* 21 N. Y. 253; *Baglie* v. *Peddie,* 5 Sandf. 192; *S. C.,* 16 N. Y. 469; *Dunlop* v. *Gregory,* 10 N. Y. 241; *Cotheal* v. *Talmage,* 9 N. Y. 551.)

We thus reach the ultimate question, whether the damages within the contemplation of the parties when they made the contract in question, are so uncertain as to be diffiult of ascertainment, and if so, whether they are so grossly excessive as to be out of all proportion to the probable loss?

In making said contract the defendants provided for the lease of a building, to be erected, when there was less than six months' time within which to complete it, and they needed

protection from the consequences of failure. They were engaged in a growing and profitable manufacturing business, which required more room and additional machinery. It was necessary to have the new building ready when their old lease expired, or their business would be seriously interrupted, and they would have no place to put either their new or their old machinery. Moreover, they could not manufacture goods for the fall and holiday trade, and they would be subject to summary ejectment from their old quarters for holding over after expiration of their term.. It was doubtful whether, at midsummer, they could secure another place, temporarily, and if they could, it would compel them to move twice, at an increased expense and loss of time. Both parties knew that the failure to have the building ready on time would naturally result in the loss of business, and either in the temporary occupation of another building or a forcible removal through legal process. These elements of damage, which were necessarily within the contemplation of the parties, as reasonable men, when. they made the contract, are uncertain, hard to ascertain with exactness and dependent upon extrinsic circumstances and considerations. Who can tell the loss to a large manufacturing business caused by closing the works in a busy season, by the removal of such a business to temporary quarters, or by summary dispossession at the hands of an officer? Who can estimate the injury to a manufacturing plant under such circumstances? What is more difficult to prove than loss of profits or damages to a business? What pecuniary standard is there to measure them by? (*Little* v. *Banks, supra.*) How can the amount be fixed, except by agreement? The damages, under the facts before us, are necessarily hard to establish with exactness, or otherwise, yet they may be so serious as to render it desirable to have the amount agreed upon in advance. The parties themselves can " come to a more satisfactory conclusion as to the damages than would be possible for a jury." (*Jones* v. *Binford,* 74 Me. 445.) This is, therefore, one of those cases where it must be presumed that the parties stipulated for the payment of a fixed sum of money

absolutely, "from the difficulty of ascertaining any exact amount of damages which would be sustained by a breach of the agreement." (*Chase* v. *Allen*, 13 Gray, 42.)

Is the sum agreed upon out of all proportion to the probable loss, under the circumstances known to the parties when the agreement was made? Is it so disproportionate that one "would start at the mere mention of it," which is the test laid down in *Cotheal* v. *Talmage* (*supra*)? Of course the parties did not contemplate a long delay in completing the building or neither of them would have entered into the contract at all. We cannot say, as matter of law, that fifty dollars a day for the absolute suspension of a prosperous manufacturing business, for a few days, at the busiest season of the year, accompanied by a temporary removal to other quarters, or a forcible removal to the street, is so excessive as to shock one's sense of justice. It is less in proportion to the actual damages than the amounts sustained in several of the cases cited. Indeed, the actual damages might exceed it and the covenant thus prove a protection to the one in default.

We think the learned trial judge erred in directing a verdict for the plaintiff, and that the judgment below should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed, etc.