to a mere sharp game. The less said about such decisions the better. Courts sit to do justice, and I know of no rule of law or practice which, intelligently understood, stands the least in the way. Nine-tenths of our trouble is with court made law, not with law made by the Legislature.

The defendants cannot be in any way aggrieved by this amend-ment, for the law of Wisconsin proved was deemed an issue of fact on the pleadings before the trial by both sides and by this court, for the evidence to prove it was taken by commission. The defendants can-not claim surprise, nor do they.

2. The other question on the trial was whether the judgment ob-tained against this plaintiff by the third party for damages for con-version is in this action res adjudicata against the defendants. The plaintiff stood upon it as such, and gave no other evidence on the question of damages. No formal notice was given by the plaintiff to these defendants of the bringing of the conversion action against the plaintiff, and calling on them to defend it, which was the course to follow in order to make the judgment binding on them (Cornell v. Travellers' Ins. Co., 175 N. Y. 253, 67 N. E. 578); but he turned the summons and complaint over to their attorneys in the attach-ment action, and they answered and defended; and he also wrote to these defendants informing them of the action, and that "your at-torneys" have put in an answer. To this the defendants made no dissent, and their acquiescence was a waiver of such formal notice. Indeed, all that occurred was equivalent to such notice. Robbins v. City of Chicago, 4 Wall. 657, 18 L. Ed. 427. And inasmuch as the attorneys had the authority to make the indemnity agreement, and had charge of the entire matter, including it, I am inclined to say that notice to them was notice to these defendants.

The motion to direct a verdict for the defendants, and also the mo-tion for a new trial on the minutes, are denied.

---

(109 App. Div. 856)

COUCH v. NEWTOWN COUNCIL BLDG. ASS'N.

(Supreme Court, Appellate Division, Second Department. December 29, 1905.)

DAMAGES—BUILDING CONTRACTS—COVENANTS AGAINST DELAY—LIQUIDATED DAMAGES.

    A building contract provided that the contractor covenanted to com-plete the work on a certain day, and for his failure, to pay the owner $10 a day after such date, during which the work remained unfinished as "fixed, ascertained and liquidated * * * actual damage which the owner will sustain by such delay." The contract price of the building was $19,700, and a witness testified that the fair rental value of the premises was $4,000 a year. The contractor delayed for 197 days the completion of the contract, during which the owner was wholly deprived of all income from the property. *Held*, that the contract provided for liquidated damages, and not for a penalty.

    [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, § 167.]

Appeal from Trial Term, Queens County.

Action by William Couch against the Newtown Council Building

Association.   From a judgment in favor of plaintiff, defendant appeals.
Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER,
RICH, and MILLER, JJ.

Clarence Edwards, for appellant.

George F. Hickey (William E. Stewart, on the brief), for respond-
ent.

MILLER, J.   The defendant appeals from a judgment in favor
of the plaintiff in an action to foreclose a mechanic's lien, and the prin-
cipal question to be determined upon this appeal relates to the counter-
claim set up by the defendant for damages for delay in the completion
of the building.   We are called upon to determine, in the light of the
contract and the attendant circumstances, whether the sum therein
stipulated to be paid for such delay is to be regarded as liquidated
damages, or as a penalty.   The material portion of the contract is as
follows:

"The contactor covenants and agrees that the whole of said work shall be
completely finished on or before November 15, 1902; and in case the con-
tractor shall fail fully to complete said work within the time aforesaid, he
hereby binds himself to pay to the owner the sum of ten dollars for each and
every day after the date last mentioned, during which said work shall remain
unfinished, which said sum is hereby fixed, ascertained and liquidated by
the parties hereto as the actual damage which the owner will sustain by such
delay."

It is undisputed that the building was not completed until June 1,
1903, a delay of 197 days.   The contract price was $19,700.   One
witness testified on behalf of the defendant that the fair rental value
of the premises was $4,000 per year.   He also testified on cross-ex-
amination that during the year preceding the trial the rents received
amounted to $2,000, and that a portion of the building was unoccu-
pied.   The trial court found as a fact that no damage resulted to
the defendant from the delay, and that the sum stipulated in the con-
tract was intended as a penalty, and not as liquidated damages.   The
learned trial court evidently thought that the amount agreed upon
was disproportionate to the probable damages, because in the opinion
delivered it is stated that the sum of $10 per day is equal to about
20 per cent. per annum on the contract price; but the contract price
did not represent the total investment of the defendant in this property,
of the use of which it was entirely deprived for the period of 197 days
by reason of the plaintiff's failure to perform his contract.   The
only evidence of the rental value is that stated above, and in the
light of this uncontradicted evidence it cannot be said as matter of law
that the sum stipulated in the contract was disproportionate to the dam-
ages likely to result from delay.   In the contract under consideration
the parties not only have described the stipulated sum as liquidated
damages, but have said that such was the amount which they agreed
upon "as the actual damage which the owner will sustain by such delay."
It is difficult to see how the plaintiff could have expressed more clearly
an intention to pay the sum stated as liquidated damages, and there
is certainly nothing in the attendant circumstances to show a contrary
intent.   It will not be profitable to discuss the many authorities deal-

ing with this interesting question, because, although the courts have gone a long way toward the establishment of a guardianship over persons who are thought to have made improvident contracts, no decision has yet been pronounced to the effect that a party cannot be required to pay the sum stipulated to be paid as liquidated damages if he actually intended to make such a contract, simply because the court might think he had made a poor bargain.  While the courts have held that the language of the contract is not controlling in determining the intention, all of the cases profess to be decided upon the theory of carrying out the actual intention of the parties.

It is said on behalf of the respondent that the sum agreed to be paid should be construed as a penalty for the reason that the damages were readily ascertainable.   I do not understand that any court has held that the parties cannot agree to pay liquidated damages if they want to, simply because it may be possible to ascertain definitely the damage suffered.   As I read the decisions, the principal reason which has moved the courts in cases of this character to determine that the intention expressed by the language used was not the real intention of the parties was the fact that to give effect to the intention expressed would give one party an unconscionable advantage over the other; but there is no such element in this case.   The parties contracted for the erection of a building, from the rental of which the defendant hoped to make a profit.   It may well be that at the time of the making of the contract the parties considered that it might not be easy to ascertain the damages likely to result from delay.   It may have been thought likely that the defendant would contract to lease the premises on a day certain and thus be subjected to damages for inability to let the tenant into possession.   Many other considerations unnecessary to discuss may have led the parties to agree upon the payment of liquidated damages, and without discussing the authorities bearing upon the proposition, I am satisfied that the true intention of the parties, to be gathered from the contract itself and the surrounding circumstances, was that the sum agreed upon should be considered as liquidated damages and not as a penalty, and that such sum is not out of proportion to the probable loss apprehended by the parties at the time as likely to result from the breach.   This construction of the contract is in harmony with decisions of the Court of Appeals.   Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398; Ward v. H. R. B. Co., 125 N. Y. 230, 26 N. E. 256.

It is contended that by permitting the plaintiff to complete the building without any complaint respecting the delay, the defendant has waived the right to insist upon the payment of damages, but of course there is nothing in this point.   Barber v. Rose, 5 Hill, 76; Oberlies v. Bullinger, 75 Hun, 248, 27 N. Y. Supp. 19.

The judgment should be reversed and a new trial granted, costs to abide the final award of costs.   All concur.