(76 Misc. Rep. 180.)

### WHITSON v. SHEFFIELD FARMS–SLAWSON–DECKER CO.

(Supreme Court, Appellate Term, Second Department. March, 1912.)

1. DAMAGES (§ 81*)—LIQUIDATED DAMAGES OR PENALTIES—CONSTRUCTION OF CONTRACT.

Where a contract of employment of plaintiff to drive milk wagons for defendant provided that, in case plaintiff failed within 48 hours after collecting any sum of money from any customer, there being over 200 customers on his route, to fully account to his employer therefor, or if he should steal or convert his employer's money or property, he should pay as liquidated damages, and not as a penalty, the amount deposited by him on entering defendant's service, and at the end of 6 weeks his services were dispensed with because of a deficiency in his cash returns of collections, he cannot recover the deposit.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 177; Dec. Dig. § 81.*]

2. DAMAGES (§ 79*)—LIQUIDATED DAMAGES OR PENALTIES—CONSTRUCTION OF CONTRACT.

An amount stipulated as damages for breach of contract is to be deemed liquidated damages when the actual damages contemplated when the agreement was made are in their nature uncertain and unascertainable with exactness, and may be dependent on extrinsic circumstances, and the amount is not on the face of the contract out of all proportion to the probable loss.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Edgar S. Whitson against the Sheffield Farms-Slawson-Decker Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GARRETSON, STAPLETON, and KAPPER, JJ.

Alger & Simpson (George W. Alger, of counsel), for appellant.

Leonard McGee (Huber B. Lewis, on the brief), for respondent.

GARRETSON, J. This action was brought to recover a sum of money deposited by the plaintiff upon his entry into the service of the defendant as a driver of one of its milk wagons, and the question presented is whether the terms of the written agreement of employment under which the deposit was made justified the retention of the sum by the defendant as liquidated damages for the failure of the plaintiff to perform the terms of the agreement on his part, or whether the stipulations made therein should be construed to be in the nature of a penalty, as the plaintiff claimed and the justice decided. It was

found as a matter of fact that the plaintiff did not perform the terms of the agreement on his part, in that he failed to account for $43.08 of money which he had collected from defendant's customers and converted to his own use.

[1] Plaintiff entered defendant's employment September 27, 1910, and continued therein for 6 weeks, when his services were dispensed with because of this deficiency in his cash returns of collections made from customers. He had had several years' experience with other concerns engaged in the same or a similar business. The material parts of the agreement are as follows:

"Fourth. The driver further agrees that in case he shall fail, within 48 hours after he shall have collected any sum of money from any customer of the company, to fully account for and pay over the same to the company at the store or office of the company to which his payments and accounts are to be made, or shall substitute goods or permit any fraud or deceit upon the company, or upon any of its customers, or shall steal or convert to his own use, or to the use of any other person other than said company, its money, or property, he shall pay as liquidated damages, and not as a penalty to the company, the amount of said deposit, and all claim which he might otherwise have thereto shall cease. The foregoing provision for such damages is made in view of the fact that the duties of the driver involve dealings with numerous customers, and collections from them of large numbers of small accounts, which together with the general nature of the business renders the extent of the loss sustained or injury done to the company and to its name and credit by such misconduct or dishonesty extremely difficult to ascertain, and ascertainable, if at all, only with great labor, and by occasioning great inconvenience and annoyance to customers, and possible further loss of custom to the company by reason of any such investigation."

The plaintiff had some 200 customers on his route, from whom he collected bills in small amounts throughout a somewhat scattered territory. His duties required that each day he should make out a "requisition sheet," showing the amount of milk, cream, etc., he required for service on his wagon. These goods were delivered to him, and he was charged upon the sheet with their value in money. In making deliveries he had with him a "route book" containing the names and numbers of his customers, in which it was his duty to enter the quantities of milk, etc., delivered to each customer, and to note the sums paid by customers to him. Upon returning to the office in the evening it was also required that he write upon the back of the requisition sheet the names and numbers of the customers from whom he had made cash collections, and the amounts received from each, and pay the aggregate thereof to the company's cashier. As illustrative of the methods of his irregularities, it appeared by his own testimony, that, while his "route book" showed the receipt of money from a customer, his entries upon the back of the requisition sheet omitted to show that he failed to account for the money thus collected. Several instances of this kind were thus proved, and the total amount of such and similar shortages was found by the trial court to be $43.08. The defendant's superintendent testified that this was but the extent of the plaintiff's shortages then found, so far as he had been able to ascertain by investigation. It is manifest that in order to ascertain their full extent a personal interview with all of the 200

customers might be necessary, and that even such inquiry might not result in a full and accurate disclosure.

Taking this agreement as it is written, the parties entered into it presumably with reference to the nature of the employment and all the surrounding circumstances, and with appreciation of the results to naturally follow from a failure on the part of the plaintiff to honestly and faithfully perform it on his part. The consequences of his lack of fealty to his obligations as expressed by the agreement were also presumably within the reasonable contemplation of the parties. Whether these consequences should be more or less harmful was dependent on the plaintiff's disposition and conduct.

[2] It is said in Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398, after citing earlier cases upon the subject:

"These authorities show that the courts have struggled hard against the apparent intention of the parties, in order to relieve the one in default from an improvident bargain. It is, however, the law of this state, as settled by this court, that, where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual damages contemplated at the time the agreement was made 'are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss.'"

Having in mind the ingenuity of human nature and the devious methods possible of use to effect, and, after accomplishment, to conceal, wrongdoing in an employment such as that covered by the agreement, the necessity, after discovery of the employé's faithlessness, for an examination of the accounts between the parties, and perchance the verification of the items by inquiry of some, if not all, of the many customers, the varying amount of the expense involved therein, the disturbance of the defendant's business, and the unsettling of the confidence of the customers in the defendant, and in their integrity, and also in that of their employés, with the resulting dissatisfaction and possible loss of trade, it cannot be said that the actual damages are in their nature certain and ascertainable with exactness, are not dependent upon extrinsic considerations and circumstances, or that the amount is on the face of the contract out of all proportion to the probable loss. The sum agreed upon is not so disproportionate that one "would start at the mere mention of it." Cotheal v. Talmage, 9 N. Y. 551, 61 Am. Dec. 716.

The plaintiff should he held to be bound by the agreed consequences of his misconduct as fixed by the agreement. His confessed failure to be faithful to his trust has but brought about a result the possibility of which was provided for and was within the reasonable contemplation of the parties. It is unnecessary to consider, as suggested by his counsel, what would have been the effect of the agreement if the plaintiff had inadvertently and unintentionally failed to account for and pay over $1, or other small sum. The amount stipulated cannot be said to be oppressive under the circumstances. Birdsall v. Twenty-Third St. R. Co., 8 Daly, 419. See, also, Gallagher v. Christopher & Tenth Sts. R. R. Co., 14 Daly, 366; Id., 13 N. Y. St. Rep. 80.

In my opinion the learned justice should have sustained the defense interposed by the defendant and awarded judgment in its favor, upon the ground that the agreement was for liquidated damages, and the amount of the deposit was, therefore, not recoverable by the plaintiff. The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.

Judgment reversed, and new trial ordered, with costs to abide event.

STAPLETON and KAPPER, JJ., concur.