JACOB HACKENHEIMER and Others, Appellants, *v.* LOUIS S. KURTZMANN and Others, Respondents.

Fourth Department, November 30, 1921.

Contracts — performance or breach — contract providing for liquidated damages for violation of its terms in use of trade name construed as of time it was made — plaintiffs entitled to amount specified and to protection from appropriation and use by defendants of trade name, although defendants did not succeed — amount of damages agreed upon not unconscionable.

A contract which provided that if the defendants violated its terms they would pay to the plaintiffs $50,000, as liquidated damages, is to be interpreted as of the time it was made, and not when subsequent events have shown that the defendants were not successful in the business which violated its terms.

Accordingly, the plaintiffs are entitled to be protected from the appropriation and use of the trade name " Kurtzmann " and to recover $50,000 stipulated as liquidated damages in a contract of sale of the good will of a business which consisted largely in the right to use the name unmolested, where it appears that the defendants deliberately violated the terms of the contract and endeavored to undermine plaintiffs' business by the unlawful use of the name, although they were not successful.

In view of the price paid by plaintiffs for the good will of the business, which included the name " Kurtzmann," the amount of damages agreed upon by the parties is not unconscionable.

DAVIS and LAMBERT, JJ., dissent, with opinion.

APPEAL by the plaintiffs, Jacob Hackenheimer and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 6th day of May, 1921, upon the decision of the court rendered after a trial at the Erie Equity Term.

*Locke, Babcock, Spratt & Hollister* [*Evan Hollister* and *L. L. Babcock* of counsel], for the appellants.

*Fleischmann & Pooley* [*Simon Fleischmann* and *Martin Clark* of counsel], for the respondents.

CLARK, J.:

This action is brought to recover the sum of $50,000, the amount agreed upon in a contract between the parties as stipulated and liquidated damages. When plaintiffs bought the stock in the corporation of Christian Kurtzmann & Co. from defendant Louis S. Kurtzmann they paid a large price for it, and principally because of the value to the business of the name " Kurtzmann."

All parties to the contract agreed that that name should be protected for the business which had been established by Christian Kurtzmann many years ago. The defendants vendors agreed with the plaintiffs that all excepting Christian Kurtzmann would not directly or indirectly interfere with the good will of the corporation by the use of the name " Kurtzmann " in connection with the manufacture and sale of pianos or piano supplies within ten years from the date of contract, and defendant Christian Kurtzmann agreed to like conditions for five years.

The name " Kurtzmann " was valuable to the business that plaintiffs bought when they purchased Louis S. Kurtzmann's stock in the old company, and it was the duty of defendants, and each of them, under their contract to refrain from using that name in the piano business during the time specified in the contract, and this they failed to do.

On May 29, 1916, and several months before the time limit expired as to him, Christian Kurtzmann caused a corporation to be formed under the name of Christian Kurtzmann, Inc. It was organized for the purpose, among other things, of dealing in pianos. He was the sole owner of this new corporation and I am satisfied it was organized by him so he could use the name " Kurtzmann " in connection with the sale of pianos in violation of the terms of the contract. The circulars sent out by that company, and photographs used, are convincing evidence that defendants intended to use the name " Kurtzmann " in their piano business which they knew they had no right to do.

I think Christian Kurtzmann violated the terms of the contract by incorporating a new company to deal in pianos, giving it the Kurtzmann name, six months before the five-year limit placed on him had expired, when he knew perfectly well that the founder of the business, whose name plaintiffs desired to preserve in connection with the business, and for which privilege they had paid a huge price, bore the same name as the younger man who incorporated this new company, using the same name as that of the founder of the business. His father then went on dealing in pianos, and his company took up the business of distributing musical instruments, thus violating the terms of the contract before the time limit had expired.

By the terms of the contract it was provided that if these defendants violated its terms, the party so violating would pay to the other party $50,000, not as a penalty, but as liquidated damages.

This contract ought to be interpreted as of the time it was made, not when subsequent events have shown that defendants were not successful in the business which violated its terms. It should be upheld, for in view of the price paid by plaintiffs for the good will of the business, which included the name " Kurtzmann," the amount of damages agreed upon by the parties is not unconscionable. (*Dunn* v. *Morgenthau,* 73 App. Div. 147; *Tode* v. *Gross,* 127 N. Y. 480; *Seidlitz* v. *Auerbach,* 186 App. Div. 7.)

The parties clearly meant this $50,000 to be liquidated damages, and not a penalty, for they said so in their contract in so many words. The amount does not shock the moral sense, in view of the fact that plaintiffs paid $130,000 largely because of the good will of the business, which consisted largely in the right to the unmolested use of the word " Kurtzmann " in connection with their business.

Plaintiffs are entitled to be protected from the questionable methods of defendants in their endeavor to appropriate and use the name they had agreed not to use for at least five years. The parties must be presumed to have understood the terms of the contract which they signed. They deliberately, and as it appears to me intentionally, violated the terms of their agreement, and endeavored to undermine plaintiffs'

business by the unlawful use of the name " Kurtzmann," and holding out to the world that they were the original people of that name, and solely entitled to use it in connection with their business. The fact that they did not succeed in their unworthy scheme is no valid reason why they should escape the consequences of their unlawful acts.

The judgment should be reversed, findings are disapproved and judgment directed for plaintiffs for $50,000, with costs.

All concur, KRUSE, P. J., in a separate memorandum, except LAMBERT and DAVIS, JJ., who dissent.

KRUSE, P. J. (concurring):

I concur with CLARK, J., for reversal. If there had been but a slight infraction of the restrictive convenant such as a failure through inadvertence to deliver mail matter to the plaintiffs as the defendants were required to do by the restrictive covenant, or even if only the new corporation had been organized preparatory to doing business after the expiration of the restrictive period, I should agree to affirm, but organizing the corporation, using the name " Kurtzmann," followed by the distribution of advertising matter and actually doing business, was, it seems to me, such a breach in the essential particulars contemplated by the restrictive covenant as to make the provisions for the stipulated damages effective. The primary purpose of the restrictive covenant was to assure to the plaintiffs the good will, including the name of the Kurtzmann piano business.

The language of the covenant is that Christian Kurtzmann within the period of five years, and the other parties to the contract within a period of ten years, from the date of the contract, will not directly or indirectly interfere with the good will of the corporation by the use of the name " Kurtzmann " in connection with the manufacture of pianos or piano supplies. That is precisely, as it seems to me, what was done and was the essential thing which the Kurtzmanns agreed not to do. Even though Christian himself may not have violated the covenant within five years, his father, Louis, I think, did violate the covenant, and for such violation, by the express terms of the contract, Christian is made liable.

I, therefore, vote for reversal.

DAVIS, J. (dissenting):

The act of Christian Kurtzmann in organizing a corporation prior to the expiration of his period of limitation was not a violation of the contract. It was no overt act forbidden by its terms. He had a right to make plans as to what he would do when freed on December 5, 1916, from the restrictive covenant.

Having in June, 1916, organized a corporation with a capital stock of $1,000, Christian Kurtzmann some time after December 5, 1916, attempted in a small way to do business and capitalize the Kurtzmann name. If plaintiffs were relying on his acts to justify their claim for liquidated damages, they were bound to establish that Christian engaged in business in violation of the covenant before December 6, 1916. There is no such proof. What evidence is before us indicates that the circulars and advertisements were printed and circulated after that time. The sale of the first piano was in September, 1917, nine months after Christian's right to engage in business had become fixed.

Evidently Christian had only started the business when he was called into military service on May 13, 1917. He was sent to France and did not return until June 6, 1919. Louis Kurtzmann, at his son's request, took charge of the business to manage it, during the emergency caused by Christian's absence. I mention this fact as significant because it negatives any deliberate and willful intent and purpose on the part of Louis Kurtzmann to violate the covenant in the contract. Anna Kurtzmann has not participated in the business.

The venture was unsuccessful. No pianos were manufactured. In a period covering more than two years only fourteen were sold. It does not appear clearly how much advertising was done by the corporation. Evidently it was inconsiderable for it resulted in the sale of a total of twelve pianos to four different firms. For how much of this Louis S. Kurtzmann was responsible is not clear, although I would deem it of importance to plaintiffs if they are depending on his violative acts as a basis of $50,000 liquidated damages against him, his wife and son. No acts but his can be relied on to sustain the cause of action.

Let us admit that the acts of Louis S. Kurtzmann in taking some charge of this small business of a son absent in his

country's service, and his participation, however slight, in conducting advertising and selling twelve pianos, were a violation of the letter of his covenant in the contract. Must joint and several liability of the defendants for this large sum follow as an inevitable and merciless consequence?

Compared with what was contemplated when the contract was made, these acts seem but technical and trivial violations. Of the $300,000 total capitalization of the corporation, Louis S. Kurtzmann sold to the individual plaintiffs his entire stock consisting of $47,000 common and $41,000 preferred. He was paid $130,000, and we must gain our knowledge of the relative value of the stock and the good will by the conjectures we may indulge in, because it is recited in the contract that the price for the stock " is based in large degree upon the good will of the business and its successful and continuous prosecution." The value of the stock at the time purchased was readily susceptible of proof, but none was offered.

Anna Kurtzmann and Christian Kurtzmann owned no stock in the original corporation. Their act in signing the contract with their husband and father and making themselves severally liable for any act of his was gratuitous.

During the time that Christian Kurtzmann, Inc., was selling fourteen pianos and doing its advertising of an evidently trifling character, the plaintiffs were manufacturing and selling each year about 5,000 pianos, and they and their dealers were advertising at the rate of from $200,000 to $260,000 per year. There is not only no proof of loss, but no proof of any material interference with " the good will " and " successful and continuous prosecution " of plaintiffs' business. The defendants had abandoned doing business more than six months before this action was brought — not an action at law to recover liquidated damages, but a suit in equity for damages, injunction and other relief.

These are the facts which lead me to differ with the majority of the court in their decision to grant the plaintiffs a judgment against the defendants for $50,000 damages, when there are no visible damages. We are not led to expect such results in a court of equity.

Where it is doubtful whether a provision should be deemed for a penalty or for liquidated damages, the courts incline

to regard it as for a penalty, for by so doing the recovery can be apportioned to the actual damages or the loss actually sustained. (17 C. J. 937.) And in some jurisdictions the intent of the parties has been disregarded in order to avoid hardship. (Id. 936.) There is considerable authority to the effect that where the contracts are in their nature susceptible of a trivial or partial breach for which the sum stated would be excessive, liquidated damages may not be recovered. (Id. 960, n. 10.)

. In the cases where the total amount of liquidated damages have usually been allowed, not only were damages difficult of ascertainment, but the breach was complete and actual damage resulted. The purpose in allowing damages is to make compensation for loss. I have no doubt that if there had been such substantial breach of the contract by the defendants or either of them, as to cause serious interference with the plaintiffs' business, they would be liable for the entire sum. But it was for a breach of the " agreements " that defendants were to become liable — not for a slight or partial breach of one or more. Breaches of the " agreements " meant those actually harmful.

In *Clement* v. *Cash* (21 N. Y. 253), where recovery was permitted, the court says: " Where the sum fixed is greatly disproportionate to the presumed actual damage, probably a court of equity may relieve."

In *Cotheal* v. *Talmage* (9 N. Y. 551) it is said: " When they have settled that compensation, neither a court of law nor a court of equity will diminish its amount, *unless it be so grossly disproportionate to the actual injury that a man would start at the bare mention of it.*"

In *Caesar* v. *Rubinson* (174 N. Y. 492) the reluctance of courts to apply the stringent rule of liquidated damages where it will result in great hardship is illustrated. There $1,000 deposited by a tenant to be retained by the landlord as liquidated damages in case of any breach of the tenant's covenant was held to be security only. O'BRIEN, J., says: " The deposit is not necessarily to be regarded as liquidated damages, although it is expressly so stated in the instrument." And again, Whether a sum named was liquidated damages " may be dependent upon extrinsic considerations and cir-

cumstances, and the *amount is not on the face of the contract out of all proportion to the probable loss."*

And again in *Seidlitz* v. *Auerbach* (230 N. Y. 167) Judge ANDREWS says: " Generally whenever the damages flowing from a breach of a contract can be easily established, or where the damages fixed are plainly disproportionate to the injury, the stipulated sum will be treated as a penalty. So where a strict construction would result in absurdity. *There must be some attempt to proportion these damages to the actual loss. The parties must not lose sight of the principle of compensation."* (See, also, to the same effect, *Dunn* v. *Morgenthau,* 73 App. Div. 147; affd., 175 N. Y. 518.)

Authorities might be multiplied. I have contented myself with statements of the rule chiefly from the cases cited by the appellants.

The plaintiffs had sufficient remedies. By the contract itself they might obtain injunctive relief. By an action brought on the contract or for unfair competition, actual damages and an injunction might be obtained.

There was not such a breach of the contract that it warranted the assessment of $50,000 against the defendants on any basis of compensation. The sum is too greatly disproportionate. While the intent of the parties in agreeing upon liquidated damages is to be interpreted as of the date of the contract, not as of its breach, it would be shocking to the conscience of a court of equity to hold that the parties contemplated that liability for the full amount should follow as a result of a slight infraction or partial breach of the contract; or that the court should undertake to enforce any such unconscionable agreement.

I must, therefore, regard the sum named to be intended as a penalty only, in case of minor or partial breaches of the contract; and record myself in favor of affirmance.

LAMBERT, J., concurs

Judgment reversed and judgment directed for the plaintiffs for the sum of $50,000, with interest and costs. Settle order before CLARK, J., on two days' notice, at which time proposals as to findings to be reversed and new findings to be made may be submitted.