(84 Misc. Rep. 126)

## POPPENBERG v. R. M. OWEN & CO.

(Supreme Court, Trial Term, Erie County. February, 1914.)

1. CONTRACTS (§ 318*)—BREACH—RIGHT TO TERMINATE.
   Where one party to a contract defaulted in fulfilling the terms of its agreement, the other party could terminate the contract and refuse further performance on his part.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 318.*]

2. CONTRACTS (§ 316*)—ACTION FOR BREACH—ESTOPPEL.
   In an action for damages for breach of a contract which, however, had been continued in force by the parties and acted upon by them during its term, the plaintiff could not claim that defendant could not recover for breaches on his part.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1382–1387, 1395, 1398–1400, 1480–1491; Dec. Dig. § 316.*]

3. CONTRACTS (§ 326*)—ACTION FOR BREACH—RIGHT OF ACTION.
   In such case all that could be claimed by the plaintiff was the right to recover for the defendant's breach.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 326.*]

4. SALES (§ 371*)—ACTION FOR BREACH—TENDER OF PERFORMANCE.
   A contract provided that, in consideration of an order for a certain number of motor cars given to a distributor, the other party as agent should have the exclusive right to sell all such cars in certain territory, and that he should take a certain number each month, and that shipping specifications for each month's allotment should be given by him 30 days in advance and if not received by that time, the distributor should have the right not to furnish the allotment for that month. *Held*, upon the distributor's claim of damages for the agent's breach that, as by the terms of the contract no shipment could be made without the agent's order, that was a condition precedent without which a physical tender of the cars was not a necessary condition of recovery.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1086–1088; Dec. Dig. § 371.*]

5. NEW TRIAL (§ 40*)—GROUNDS—ERRORS AT TRIAL—NECESSITY OF PREVIOUS OBJECTION.
   Where plaintiff's contention at the trial was that defendant's measure of damages on his counterclaim for breach of contract in not taking the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

full number of cars agreed was the difference between the contract and the market price, he cannot urge, first on motion for new trial, that defendant's recovery must be limited to the amount of plaintiff's deposit as liquidated damages.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 62–66; Dec. Dig. § 40.*]

6. DAMAGES (§ 81*)—LIQUIDATED DAMAGES OR PENALTY—BREACH OF CONTRACT.

A contract, in consideration of the purchase of a certain number of motor cars from the distributor handling the manufacturer's entire output, gave the purchaser an exclusive agency for such cars, and provided that he should, on the signing of the contract, "deposit $1,500 on each machine," to be placed to his credit, shipments to be made sight draft against bill of lading, f. o. b., the amount of deposit on each machine being deducted from draft as shipments were made, and that if the agent rejected or refused to accept or pay for any cars, all deposits theretofore made by him should belong to the distributor as liquidated damages for breach of the contract, and thereunder only one deposit of $1,500 was made. Held, in the agent's action for damages in which defendant counterclaimed for damages, that, since the parties had not insisted upon strict compliance with the contract, the distributor's recovery was not limited to the $987 remaining as the balance of the first deposit.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 177; Dec. Dig. § 81.*]

7. DAMAGES (§ 76*)—LIQUIDATED DAMAGES OR PENALTIES—CONSTRUCTION.

Courts regard with disfavor agreements by which the damages of the parties are fixed, regardless of the actual losses sustained; and, while such agreements under certain circumstances are binding, the courts incline to treat them rather as a provision for penalty than for liquidated damages, particularly where the stipulated sum is clearly disproportionate to actual losses sustained, and the actual damages are readily ascertainable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154, 155; Dec. Dig. § 76.*]

8. SALES (§ 384*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

Under Personal Property Law (Consol. Laws, c. 41) § 145 as added by Laws 1911, c. 571, declaring the measure of damages for nonacceptance of goods to be the estimated loss directly and naturally resulting in the ordinary course of events from the buyer's breach, and that where there is no available market for the goods, the measure of damages, in the absence of special circumstances, is the profit the seller would have made if the contract of sale had been fully performed, an agent's breach of a contract whereby, in consideration of the purchase of a certain number of cars from the sole distributor who handled the manufacturer's entire output of special machines, built on special models, and the price for which was established by the distributor, so that there was no available market or market price, entitled the distributor to recover the profits lost by reason of the breach, i. e., the difference between the price agreed to be paid for the cars not taken and the cost to him of furnishing such cars.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

Action by Gustave Poppenberg against R. M. Owen & Co., with counterclaim by defendant. Motion by plaintiff for a new trial after a verdict for defendant. Denied.

See, also, 149 App. Div. 932, 134 N. Y. Supp. 1143.

Frank Gibbons, of Buffalo, for plaintiff.

Irving W. Cole and Hamilton Ward, both of Buffalo, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WHEELER, J. The plaintiff moves for a new trial on the ground of alleged errors claimed to have been committed by the court on the trial of this action. The complaint set forth eight causes of action upon a contract entered into between the parties to this action, nearly all of which were either admitted by the pleadings, or conceded upon the trial. There was, however, a controversy touching the right of the plaintiff to a reduction on the list price of certain automobiles made in July, 1911. The main controversy arose out of the contract between the parties, dated June 30, 1910. By the terms of this contract the defendant, in consideration of an order for 420 Reo motor cars, gave the plaintiff "the exclusive right to sell all styles of Reo motor cars," in the counties of Erie, Niagara, Chautauqua, Cattaraugus, Orleans, Genesee, Wyoming, Allegany, Livingston, Monroe, Steuben, Yates, Ontario, and Seneca, in this state until July 31, 1911. The plaintiff agreed to push the sale of the Reo cars to the best of his ability in the territory named, and as part of the contract agreed to handle, during the term of the contract, "only cars sold by the party of the first part, except upon the written consent of the party of the first part." It was conceded the plaintiff did not take or pay for all the 420 cars agreed to be purchased, nor did he handle exclusively the cars sold by the defendant, but, on the contrary, handled and sold a large number of automobile cars manufactured by other concerns. The defendant set up, by way of counterclaim in its answer, the failure of the plaintiff to comply with the contract in the particulars above specified, and demanded damages for such breach. The plaintiff, on the trial, contended that the requirements of the contract in these respects had been waived by the defendant, and these questions of fact so presented by the evidence were submitted to the jury for their disposition, under proper instructions. The jury returned a verdict in favor of the defendant for the sum of $31,315.33, which it may be said represented the damages sustained by the defendant, less the demands of the plaintiff allowed by the jury.

So far as the disputed questions of fact have been settled by the verdict of the jury, they are not now the subject of further consideration. Their verdict was fully sustained by the evidence. It only remains to review, as briefly as possible, the questions of law raised and involved in the case.

[1] The plaintiff contends, in the first place, that the defendant is entitled to recover no damages whatever for any breach of the contract by the plaintiff, for the reason that the defendant was guilty of a breach of the contract in question on its part, in that the defendant did not make or deliver, or offer to sell or deliver, any of the automobiles designated and described as "Models K or J," in the contract. An examination of the contract shows that 85 of the 420 cars agreed to be purchased were to be what is designated as the "K Roadster" and "J Roadster." Some time after the contract had been entered into, and prior to December 21, 1910, the defendant notified the plaintiff that it would not be able to furnish any of the automobiles described as Models K and J, but proposing instead to substitute in place thereof what is known as the "Torpedo Roadster." The defendant claims that this

proposed substitution was mutually agreed upon by the parties. But we deem it quite immaterial in this case whether such was the fact or not. If the defendant defaulted in fulfilling the terms of its agreement, the plaintiff had a perfect right to terminate the contract, and refuse further performance on his part. This he did not do. On the contrary, he insisted on the right to continue to act as the representative of the defendant under it. In fact the evidence discloses that early in the winter of 1911 the defendant became solicitous about the plaintiff living up to his agreement with it, and wrote the plaintiff, calling attention to the fact that he was not taking cars as he had contracted to do, and expressing doubt whether, under the circumstances and by reason of his delay, he would be able to handle and dispose of the cars he had agreed to purchase, and offering on its part to cancel the contract with the plaintiff, with a view, of course, of making arrangements with others to handle the business in the territory given the plaintiff exclusively. The plaintiff declined to terminate the existing contract, and sent his representative to the defendant, excusing his delay in performing his agreement to take cars, and assuring defendant's officers that all would be satisfactory, and the cars agreed to be purchased would ultimately be taken and disposed of within the life of the contract. Upon these assurances the parties continued to act and do business under the contract in question, and no question was raised by either but that the contract was in full force and effect.

[2, 3] Of course, if the defendant failed to fulfill some of the stipulations of the contract, and the plaintiff suffered damage by reason of such failure, the plaintiff was entitled to maintain an action for such a breach. The court so charged the jury, but the plaintiff neither alleged in his complaint nor proved on the trial any damages resulting from the failure of the defendant to manufacture or deliver the "Model K" roadster, or any other of the cars covered by the agreement. In fact, I recall no evidence in the case where any shipping orders for such roadsters were given. The contract having been continued in force and effect by the parties, and acted upon by them during the term of its life, the plaintiff is now in no position to say that the defendant cannot recover for breaches on its part. Deeves & Son v. Manhattan Life Ins. Co., 195 N. Y. 330, 88 N. E. 395; Ruff v. Rinaldo, 55 N. Y. 664; Granniss & Hurd Lumber Co. v. Deeves, 72 Hun, 171, 25 N. Y. Supp. 375, affirmed 147 N. Y. 718, 42 N. E. 723; Beyer v. Huber Co., 115 App. Div. 344, 100 N. Y. Supp. 1029; Crocker-Wheeler Co. v. Varick Realty Co., 104 App. Div. 570, 88 N. Y. Supp. 412, 94 N. Y. Supp. 23; Sinclair v. Tallmadge, 35 Barb. 602–606; Rogers v. Beard, 36 Barb. 31; Ming v. Corbin, 142 N. Y. 334, 37 N. E. 105; Tipton v. Feitner, 20 N. Y. 425; Secor v. Sturgis, 16 N. Y. 548. All that could be claimed by the plaintiff under such circumstances was the right to recover for the defendant's breaches, and in this case the damages, if any, were at best purely nominal, so far as the evidence discloses.

[4] It is further contended, on the part of the plaintiff, that the defendant cannot recover for the failure of the plaintiff to take and pay for the automobiles agreed to be purchased, for the reason that the defendant never tendered the cars not taken, and that without such a

tender the defendant could not put the plaintiff in default. On the other hand, the defendant contends that no such physical tender was necessary under the terms of the contract and the circumstances of the case. The justice presiding at the trial held that a physical tender was not necessary, and denied a request to charge in accordance with the plaintiff's contention in this regard.

In order to fully understand the question presented and the ruling made, it is necessary to examine the provisions of the contract between the parties. This agreement recites that:

"In consideration of an order for 420 Reo motor cars placed by the party of the second part with the party of the first part, the party of the first part grants to the party of the second part the exclusive right to sell all styles of Rea motor cars"

—in certain territory embracing all Western New York. The contract provides that the plaintiff was to take a certain number of cars each month; 4 in August, 21 in September, 21 in October, 11 in November, 9 in December, 18 in January, 39 in February, 75 in March, 79 in April, 82 in May, 42 in June, and 19 in July. The different types and styles of motor cars, and the number of each type were specified. It was also provided that:

"Shipping specifications for each month's allotment of cars must be given the party of the first part by the party of the second part [i. e. the plaintiff] 30 days in advance. If shipping specifications are not in factory thirty days prior to the above monthly delivery table, then the party of the first part reserves the right not to furnish the above-specified allotment for the month in question."

The contract further provided the plaintiff should sell only the cars sold by the defendant; that the plaintiff should not invade other territory than that given him, and agreed to refer all inquiries outside that territory to the defendant. He also agreed to appoint subagents for properly handling the business contemplated, and to report the names and addresses of all purchasers of Reo cars, and to provide ample facilities for handling, adjusting, and repairing machines sold to purchasers. It will thus be seen that the contract was not simply for the purchase of a given number of cars, but for an exclusive agency, in which the plaintiff was to represent the defendant and push the sale of its cars.

It was further provided that after the receipt of shipping specifications, the "shipments to be made sight draft against bill of lading f. o. b. Lansing, Mich.' The shipping specifications in use provided for the number of cars, the manner of shipment, by what route, the place of delivery, and to whom delivery was desired, directions as to how to draw draft, and other details.

The defendant had the exclusive sale of the entire output of the Reo Manufacturing Company, and it was evident that the provisions of the contract were framed as they were in order to give the defendant opportunity to meet the requirements of the plaintiff by, in turn, placing the orders received from him with the Reo Company, the manufacturer.

It will thus be seen that by the very terms of the contract the defendant could make no shipment, or draw any draft for a shipment,

until it had received from the plaintiff the shipping specifications or directions, and instructions contemplated by the agreement. The initial act or duty rested on the plaintiff and not on the defendant. The plaintiff made an affirmative agreement to give these specifications, and his failure so to do constituted a breach of the contract on his part. These shipping specifications by the plaintiff were things to be done before the defendant was called on to do any act toward shipment or delivery.

The evidence shows that the defendant was constantly and emphatically demanding of the plaintiff that he furnish such specifications, and that it was ready at all times to fill, and actually did fill, all orders received, for which specifications were sent. The plaintiff, on his part failed and omitted to perform the duty imposed by the contract on him. It was an act imposed on the plaintiff as a condition precedent to the duty or right of the defendant to ship.

The facts in this case bring it fairly and squarely within the decided case of Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 544, 100 N. E. 462, where Judge Werner, speaking for the court, said:

"The subject-matter of the contract was such that it was not necessary for the plaintiff to make a physical tender. Shipments were to be made, moreover, according to directions from defendant, and when it refused to give such directions after request by the plaintiff the breach was complete."

See, also, Atkinson v. Truesdell, 127 N. Y. 230, 27 N. E. 844.

We, therefore, think the point that a physical tender of the cars agreed to be purchased was unnecessary, and the plaintiff's exceptions to the rulings of the trial court not well taken.

The remaining questions raised on this motion relate to the measure of damages, which should control the defendant's recovery.

The plaintiff contends that the contract betwen the parties limits the recovery to the deposit made by the plaintiff, and further insists that, if such is not the case, the rule laid down by the trial court for the guidance of the jury was erroneous.

We proceed to a consideration of these questions in the order presented, and call attention to clauses 14, 15, 16, 17, and 18 of the contract, which provide:

"14. It is mutually agreed that the following terms of payment shall prevail in the matter of all orders, viz.:

"15. The party of the second part shall deposit with the party of the first part, at the signing of this contract 1500 dollars on each machine, which amount will be placed to the credit of the party of the second part; shipments to be made sight draft against bill of lading, f. o. b. Lansing, Mich.

"16. Accounts for parts and accessories ordered by the party of the second part shall be due and payable at the office of the party of the first part in Lansing, Mich., on or before the tenth of each month for goods ordered during the preceding month. If the party of the second part fails to remit as heretofore provided the party of the first part is hereby authorized to apply in payment of said parts account any cash deposits held by the party of the first part for account of the party of the second part, and until such deposits are restored by the party of the second part there shall be no deduction of deposits theretofore made.

"17. The party of the first part agrees, that if credit is passed to the party of the second part for parts returned and parts account has already been paid

by the party of the second part, it will, upon request, immediately send its check to the party of the second part for such credit memorandum.

"18. And it is hereby expressly agreed that in case the party of the second part shall neglect or refuse to accept or to pay for any car or cars which the party of the second part has theretofore specified, then and in that case all deposits theretofore made by the party of the second part shall belong to and be the property of the party of the first part as liquidated damages for the breach of this contract."

[5] When the contract was executed, the plaintiff deposited with the defendant the sum of $1,500. At the time the contract, by its terms, expired, a balance of $986.92 remained in the defendant's hands. The plaintiff contends that any right of recovery on the part of the defendant was, by the terms of the contract, limited to that amount as *liquidated damages*. It is perhaps sufficient answer that this contention is made for the first time on this motion for a new trial. It was not raised upon the trial; but, on the contrary, the plaintiff's counsel proceeded upon an entirely different theory as to the rule which should be applied in the disposition of the case. After taking exception to the rule as given to the jury by the court, plaintiff's counsel requested the court to charge that if the jury awarded damages to the defendant upon its counterclaim, "the measure of damages would be the difference between the contract price and the market price at the time and place of delivery." The court refused to charge the proposition. The request, however, shows that no claim was made on the trial that the defendant's damages were limited to the amount of the deposit in the defendant's hands as liquidated damages. Nor was the question raised by any allegation in the plaintiff's reply to the defendant's counterclaim. If the plaintiff had desired to stand on the proposition that the damages were limited to the deposit in the defendant's hands, he should have raised the question on the trial, and insisted on the rule as now claimed; otherwise he will be deemed to have waived his right. In other words, the plaintiff, by the position he took upon the trial, assumed and proceeded upon the theory that the defendant, if entitled to recover at all, was entitled to recover substantial damages, uncontrolled and unrestricted by the clause of the contract now insisted upon. It is a well-recognized rule of law that on an appeal, a case must be disposed of upon the theory upon which it was tried. Hicks v. British Am. Assur. Co., 162 N. Y. 284–290, 56 N. E. 743, 48 L. R. A. 424; Caponigri v. Altieri, 165 N. Y. 255–263, 59 N. E. 87; Daley v. Brown, 167 N. Y. 389, 60 N. E. 752; Vann v. Rouse, 94 N. Y. 401; Wellington v. Morey, 90 N. Y. 656; Tyng v. Corp. Trust Co., 104 App. Div. 486, 93 N. Y. Supp. 928. We, therefore, think the question cannot now be raised for the first time on this motion for a new trial.

[6] Irrespective, however, of the question as to whether the point raised is available to the plaintiff on this motion, we are of the opinion that the defendant's recovery was not limited to the deposit in its hands. The fifteenth clause of the contract provides that:

"The party of the second part [the plaintiff] shall deposit with the party of the first part [the defendant] at the signing of the contract, $1,500 *on each machine*, which amount will be placed to the credit of the party of the second part; shipments to be made sight draft against bill of lading, f. o. b. Lansing, Michigan."

An examination of the original contract will show that a printed form of a contract was used, and this form had, immediately following the words of the fifteenth clause quoted, the following additional words which were eliminated by the drawing of a pen through them, viz.: "The amount of deposit on each machine being deducted from draft as shipments are made." As the contract stands, and if construed according to its terms, the plaintiff was required to deposit with the defendant $1,500 for *each* of the 420 cars ordered, and agreed to be purchased "at the signing of the contract." This, of course, was not done. A strict compliance with the contract in this respect was not insisted on by the defendant. One deposit of $1,500 was in fact made, which amount was reduced at the time of the suit to $986.92 by charging against it for extras furnished the plaintiff.

In addition there is attached to the contract a letter from the defendant to the plaintiff, in which reference is made to clause 15 of the contract, in which it is provided that when one-third of the cars ordered are delivered, one-third of the deposit is to be returned, and when two-thirds of the cars have been delivered, $500 is to be returned, and the balance at the completion of the contract. The parties have certainly left these provisions in a hopeless jumble so far as the wording of the contract is concerned. So far as the literal reading is concerned, we have an agreement to put up $1,500 on each machine at the time of the signing, modified by the letter that one-third of the amount is to be returned when one-third of the machines have been delivered, $500 when another third has been delivered, and the balance on the completion of the contract.

The eighteenth clause of the contract as to liquidated damages should be read and interpreted in the light of the agreement as made, notwithstanding that a strict and literal compliance was not insisted on by the defendant. When, therefore, the eighteenth clause provided:

"And it is hereby expressly agreed that in case the party of the second part shall neglect or refuse to accept or to pay for any car or cars which the party of the second part has theretofore specified; then and in that case all deposits theretofore made by the party of the second part shall belong to and be the property of the party of the first part as liquidated damages for the breach of this contract"—

it may be argued that the parties had in view the entire deposit agreed to be made, of $1,500 on each car of the 420 agreed to be taken. This amount would more than have indemnified and saved the defendant harmless from any loss or damage it could have sustained by reason of any failure to accept drafts, or pay for machines shipped, or which he had contracted to buy.

In any event, can the plaintiff stand on the strict letter of the contract and now insist that the small balance in the defendant's hands must be accepted and deemed the total recovery to which the defendant is entitled when that small unexpended balance was due to the failure of the plaintiff himself to comply with the strict letter of the agreement as to the amount to be deposited, owing to the indulgence of the defendant in not insisting on a strict compliance with its terms on the plaintiff's part at the time of signing? If the plaintiff is to insist on the letter of the contract, and stand on the proposition that

the contract liquidates the damages between the parties for a general breach of the contract, then the defendant has an equal right to insist that the plaintiff should make good the amount which it was stipulated should constitute the liquidated damages, that is, $1,500 for each machine. This would leave the plaintiff in a far worse condition than he now finds himself under the ruling of the court confining the defendant's damages on the counterclaim to such losses as it actually sustained by the failure of the plaintiff to fulfill.

If, on the other hand, the contract between the parties is to be construed as fixing an amount as liquidated damages for the failure to pay for each particular car shipped pursuant to shipping specifications given, then it is plain that such damages do not relate to or cover a general breach of the contract, such as is presented by the facts in this case, and the recovery cannot be limited to the amount of the particular deposit. Whether the contract is susceptible of this latter interpretation or not, it is sufficient for the purposes of this case to say that whichever of the two interpretations is to prevail, neither of them aid or assist the plaintiff in his contention.

[7] It, however, may be said as a general proposition, that courts are disposed to regard with disfavor agreements by which the damages of parties to them are fixed at stated amounts, regardless of the actual losses sustained. Such agreements have been held valid and binding in certain cases and under certain circumstances. The disposition of the courts, however, is to treat such engagements rather in the nature of a provision for a penalty than as liquidated damages, particularly in cases where the stipulated sum is clearly disproportionate to actual losses sustained, and where the actual damages are easily and readily ascertainable, as they were in the case at bar. Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398; Hicks v. Monarch Cycle Co., 176 N. Y. 111, 68 N. E. 127; Cæsar v. Rubinson, 174 N. Y. 492, 67 N. E. 58; Kemp v. Knickerbocker Ice Co., 69 N. Y. 45; Bagley v. Peddie, 16 N. Y. 469, 69 Am. Dec. 713; Cotheal v. Talmage, 9 N. Y. 551, 61 Am. Dec. 716.

In Curtis v. Van Bergh, 161 N. Y. 47, at page 52, 55 N. E. 398, at page 400, the court said:

"Where the sum agreed to be paid is so great as to be unconscionable, it will be regarded as a penalty, even if the parties have expressly declared their intention to be otherwise. Kemble v. Farren, 6 Bing. 141; Jackson v. Baker, 2 Edw. Ch., 471; Spencer v. Tilden, 5 Cow. 144; Niver v. Rossman, 18 Barb. 50; Mott v. Mott, 11 Barb. 134; Beale v. Hayes, 5 Sandf. 640."

In Hicks v. Monarch Cycle Mfg. Co., 176 N. Y. at page 114, 68 N. E., at page 128, the court said:

"The rule is that 'when the stipulated sum is disproportionate to presumable and possible damages, or to a readily ascertainable loss, the courts will treat it as a penalty, and will rely on the principle that the precise sum was not the essence of the agreement, but was in the nature of security for performance.' Ward v. Hudson River Bldg. Co., 125 N. Y. 230 [26 N. E. 256]; Curtis v. Van Bergh, 161 N. Y. 47 [55 N. E. 398]; 3 Parsons on Contracts (6th Ed.) 157."

In the case of Cæsar v. Rubinson, 174 N. Y. 492, at page 496, 67 N. E. 58, at page 59, Judge O'Brien, speaking for the court, said:

"A provision in a contract such as that now under consideration will be treated as liquidated damages only in those cases where from the nature of the transaction the actual damages consequent upon a breach of the contract are incapable of accurate measurement, or where the sum specified in the instrument is not out of all proportion to any damages which could possibly arise from a breach. In the cases where these general features do not exist, the tendency of the courts is to treat the stipulation not as providing for liquidated damages, but in the nature of a penalty. Where the language of such a provision specifying the amount of damages to be paid in case of a breach of the contract is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual damages contemplated at the time the agreement was made are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not on the face of the contract out of all proportion to the probable loss."

These principles should obtain whether the stipulated amount is excessively large or grossly inadequate.

When we consider this case in all its bearings, with all the surrounding circumstances, we can reach no other conclusion than that the contention of the plaintiff that the defendant's damages should be limited to the $986.92 in hand must be repudiated as unsound.

[8] It then only remains for us to consider whether the rule of damages actually laid down by the trial court for the guidance of the jury was the proper rule in this case. The court, in substance, charged the jury that, if the defendant was entitled to recover upon its counterclaim, it was entitled to recover the profits lost by reason of the breach; that is, the difference between the price agreed to be paid for the cars not taken and the cost to the defendant of furnishing the cars in question. To fully understand the situation, it will be necessary to here state certain undisputed facts bearing on the question of damages. The cars agreed to be purchased were the Reo motor cars, manufactured by the Reo Manufacturing Company, of Lansing, Mich. The defendant in this action had a contract with the Reo Manufacturing Company by which it took and handled the entire output of that factory. This contract specified the prices to be paid by the defendant for the various styles or models made by that company. The defendant in turn disposed of the automobiles so purchased by it through the means of subagencies for their sale, and by arrangements with dealers throughout the United States and Canada. No cars were to be had, except through the defendant, which, in order to facilitate and advance the sale of these cars, expended many thousands of dollars in extensive advertising of these cars in various ways—by display advertisements in various journals and magazines published throughout the country, and by exhibitions in large cities. In fact the defendant may be said to have stood practically in the place and stead of the manufacturer, for it took all cars made by it, and none were to be had except from the defendant. The defendant, by this arrangement with the factory, was able to deliver to the plaintiff all the cars agreed by him to be purchased, excepting, of course, the Model K Roadsters, which we have discussed earlier in the opinion. It in fact shipped and delivered to the plaintiff every car for which the plaintiff gave any shipping specifications, and was prepared to fulfill its contract with the plaintiff in every respect.

It is thus perfectly plain that when the plaintiff failed to carry out his contract and to pay for the cars he had agreed to purchase, the defendant necessarily lost the difference between the price which the plaintiff agreed to pay and what those cars cost the defendant at the factory. This difference, the court charged the jury, the defendant was entitled to recover, if a recovery was allowed the defendant on its counterclaim. The simple question is whether this was the correct rule of damages to be applied in this case. Section 145 of the Personal Property Law of the state lays down the general principles governing damages. It provides:

"Action for Damages for Nonacceptance of the Goods:

"1. Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"2. The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"3. Where there is an *available market* for the goods in question, the measure of damages is, in the *absence of special circumstances*, showing approximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept. * * * *The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages.*"

This section is nothing but a codification of the common-law rules of damages long established by the decisions of the courts.

It is to be noted in the first place in this case that there was no *available market* or *market price* of the cars agreed to be purchased. These cars are not like staple articles like wheat or other food products, where there is an established market and a market price, and any one desiring to purchase can go into the open market and by paying the price, obtain what is desired. This was a special machine, built on special models, and after special designs, only to be purchased from the defendant in this action, which took the entire output of the factory. The price the defendant established was the price that controlled. So we have a special article of manufacture, handled only by, and exclusively by, the defendant.

In the case of Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676, the Court of Appeals laid down the general rule that in cases of this general nature the injured party is entitled to recover such damages as he has sustained by reason of the breach, i. e., *the value of the contract,* not merely imaginary or speculative damages, but such as are reasonably certain, and such only as actually follow, or might follow, from such breach, and that prospective profits, so far as they can properly be proven, and which would certainly have been realized but for the defendant's default, are recoverable. This rule has been repeatedly applied and followed in various cases and under varying circumstances.

In Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225, it was held that the general rule fixing the measure of damages for a breach of a contract of sale by the vendee, the difference between

the contract price and the market value, had no application to a breach of a contract for the manufacture and sale of a commodity, unless it appears that, upon the breach by the vendee, the vendor could have placed the commodity upon the market and thus have relieved himself from the consequence of the vendee's default.

Consquently it was held that where the subject of a contract of sale at a fixed price is an article to be manufactured by the vendor, having a limited demand and no real market, the vendor was entitled to recover the difference between what it would cost him to manufacture and deliver the article under the contract and the contract price. To the same effect are the cases of Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 529, 100 N. E. 457, 461; Belle of Bourbon Co. v. Leffler, 87 App. Div. 302, 84 N. Y. Supp. 385; Snell v. Remington Paper Co., 102 App. Div. 138, 92 N. Y. Supp. 343; Lehmaier v. Standard Specialty Co., 123 App. Div. 436, 108 N. Y. Supp. 402; Isaacs v. Terry, etc., 125 App. Div. 534, 109 N. Y. Supp. 792; Meyer Bros. Drug Co. v. McKinney, 137 App. Div. 541, 121 N. Y. Supp. 845.

The facts in this case bring it squarely, we think, within the rule enunciated above. The defendant was not technically the manufacturer of the cars contracted to be purchased, but it stood, so far as its relations to the plaintiff were concerned, in that position. Under contract with the factory the defendant took its entire product. It controlled every car turned out by the factory. In other words, the Reo Manufacturing Company manufactured for the defendant alone, and was prepared and equipped to supply the defendant with all cars which it could sell. The evidence shows that the Reo Manufacturing Company in fact had on hand the constituent parts of the different styles of cars capable of being assembled and made into a completed motor car on short notice, and in time to have fulfilled any orders received from the defendant. It will be noted that the contract between the plaintiff and defendant distributed the time of purchasing the 420 cars in question over the entire year, specifying the number and kind to be taken each month, and further providing that shipping specifications should be given 30 days in advance. This timely notice was undoubtedly required so that the defendant might have ample opportunity to make the necessary arrangements with the factory for the proper assembling of the parts into the completed machine. Consequently the defendant had the same right to assert against the plaintiff the same rule of damages as would be applied had the contract ran direct to the factory instead of to the defendant.

The amount of the damages was absolutely definite and certain, and was in no sense speculative. The defendant got the cars at a specified price from the factory. The plaintiff agreed to buy from the defendant for another fixed price, and the difference between these prices on the number of cars not taken was a simple matter of computation. It is only proper to add at this time that the overhead charges or expense of the defendant, the evidence showed, would have been in no way increased by the fulfilling of the contract with the plaintiff.

The number of models K and J mentioned in the contract, the jury were instructed to eliminate from their consideration in arriving at

the amount of damages in the defendant's counterclaim. This they did, and made their award solely on the number of other machines which the plaintiff failed to take and pay for. We think their verdict was correct, and that the court committed no error in the rule of damages charged.

The motion for a new trial is therefore denied.

So ordered.