PAOLO GENOVESE, Plaintiff, *v.* A. LENOBEL, INC., Defendant.

Municipal Court of New York, Borough of Queens, Sixth District, June 1, 1933.

*Gellman & Gellman*, for the plaintiff.

*Robert Jablin*, for the defendant.

O'ROURKE, J. On August 24, 1927, the plaintiff entered into a contract with the defendant, introduced in evidence on the trial of this action entitled " Purchase Agreement New Car," whereby he placed his order for a Chrysler 72 sedan to be delivered on or after January 1, 1928. At the same time he turned in a Ford truck, which, according to the contract, was " taken in on consignment only." The contract provided for an allowance of $350 for the Ford truck.

The plaintiff, because of financial difficulties, never went through with the contract and never took delivery of a Chrysler automobile.

The defendant, a Chrysler dealer, thereafter sold the Ford truck for $300.

The defendant neither appropriated a car to this contract nor resold any new car for or on account of the plaintiff.

It was conceded by both sides at the trial that the plaintiff, on the one hand, was entitled to a credit in the sum of $300, and that the defendant, on the other hand, was entitled to compensation for its damage by reason of the failure of the plaintiff to complete performance.

The material question at issue is: " What were the damages of the defendant?" The defendant claims, as its damages, its loss of profit, that is the difference between the contract price at which it agreed to sell the car to the plaintiff, to wit, $1,800, and the

price which it paid for such an automobile, to wit, $1,350, or $450, citing *Poppenberg* v. *Owen & Co.* (221 N. Y. 569). Plaintiff claims that the true measure of damages in this case is the difference between the contract price and the market price, citing *Lowas Garage Co.* v. *Scheer* (199 N. Y. Supp. 748).

In the *Lowas Case* (*supra*) a Studebaker dealer sued the defendant for failure to complete his contract. The facts were almost identical with this case, there was a market, and no special circumstances. The court, Bijur, J., writing the opinion, said: " The measure of damage for defendant's failure to accept the car was the difference between the contract price and the market price. There is not only no evidence, but no claim, that there was not a constant and ready market for this class of car. The case is thus sharply differentiated from *Poppenberg* v. *Owen & Co.* (221 N. Y. 569, affg. 84 Misc. 126), in which a different ruling was based on the proved absence of a market price."

In the *Poppenberg Case* (*supra*) the agent entered into a contract with the distributor whereby the distributor was to have the exclusive right to sell Reo automobiles in a certain territory. The distributor took up the entire output of the agent factory on this particular design or model car. No Reo car was to be sold in this certain territory except through this distributor. Upon the failure of the distributor to take the number of cars stipulated in the contract, the agent sued to recover for the damages suffered on account of the breach of said agreement.

After referring to the Personal Property Law, the court in reaching its decision said (84 Misc. 126, 143): " It is to be noted in the first place in this case that there was no available market or market price of the cars agreed to be purchased. These cars are not staple articles like wheat or other food products where there is an established market and a market price, and any one desiring to purchase can go into the open market and, by paying the price, obtain what is desired. This was a special machine, built on special models, and after special designs, only to be purchased from the defendant in this action, which took the entire output of the factory. The price the defendant established was the price that controlled. So we have a special article of manufacture handled only by, and exclusively by, the defendant." It is further pointed out in the case that the amount of the seller's damages was absolute, definite and certain, and was in no sense speculative.

Subdivision 3 of section 145 of the Personal Property Law reads as follows: " Where there is an available market for the goods in question, the measure of damages is, in the absence of special

circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

It thus appears that if there was an available market for Chrysler cars, then the defendant must show special circumstances, such as are described in subdivision 4 of this section, to entitle it to loss of profit.

That this is the true rule has been held by a long line of authorities, notably *Windmuller* v. *Pope* (107 N. Y. 674, 675), wherein it was said: " The ordinary rule of damages in an action by a vendor of goods and chattels, for a refusal by the vendee to accept and pay for them, is the difference between the contract-price and the market value of the property at the time and place of delivery."

There was considerable testimony taken at the trial to show that there was an available market for Chrysler automobiles during the latter part of 1927 and the early part of 1928; that the Chrysler 72 was a stock model and that no particular car was appropriated on this contract. I, therefore, find and decide that there were no special circumstances which would entitle the defendant to a loss of profits, and that its damages were only nominal.

If the above is correct, we now have the parties in the position where the defendant has sold a second-hand Ford truck for and on behalf of the plaintiff for the sum of $300. Testimony was produced by the defendant to the effect that where it sells a used automobile it is entitled to a commission of thirty-three and one-third per cent of the sale price thereof, which was uncontradicted, and which the court will adopt as being a fair and reasonable amount for the services rendered.

Plaintiff is entitled to judgment in the sum of $300, less commission of thirty-three and one-third per cent.