Popp and another, Respondents, vs. Yuenger, Appellant.

*October 10—November 9, 1938.*

For the appellant there was a brief by *Eberlein & Mc-Carthy* of Shawano, and oral argument by *J. R. McCarthy*.

For the respondents there was a brief by *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by *L. J. Brunner* and *O. Strossenreuther*.

FRITZ, J.   The assignments of error are based on alleged errors in the court's rulings in relation to the measure of damages recoverable by the plaintiffs, as automobile dealers, for the defendant's breach of a contract to purchase a new Chevrolet automobile.   In the order signed by the defendant on September 13, 1937, there was the statement,—

Cash Delivered Price of Car—De Luxe Equipment $792.50
1935 Ford ................................ 452.50

Balance ................................. $340.00

The plaintiffs were ready, able, and willing to deliver the Chevrolet automobile equipped as ordered, but the defendant refused to accept delivery and to deliver his 1935 Ford automobile to the plaintiffs and pay them the $340 in cash as agreed in his order.   The jury found that the plaintiffs' profit on the sale, if delivery had been accepted by the defendant on September 13, 1937, would have been $100; and that on that date the market value of the Chevrolet automobile was $694.   The court entered judgment on that verdict for the plaintiffs' recovery of $100 as damages.

It is conceded that the plaintiffs were dealers at retail in automobiles; that the cost at wholesale to the plaintiffs of the Chevrolet automobile, with the equipment, was $594; that the retail sales price thereof as fixed by the manufacturer was $792.50; and that for it the plaintiffs were to receive from the defendant his used 1935 Ford automobile and $340 in cash.   During the trial, various rulings involving the question as to the proper measure of damages were made by the court in relation to the admission or exclusion

of evidence, the issues to be submitted as questions in a special verdict, and instructions to be given to the jury. No purpose will be served by stating those rulings in detail, or the particular evidence, questions for the verdict, or instructions given or requested in relation to which the rulings were made. It suffices to note that they were in conflict with the defendant's contentions that the proper measure of damages is the difference between the agreed contract price, which he claims was $340, plus the market value of the 1935 Ford automobile, and the reasonable market value of the Chevrolet automobile, plus the reasonable cost of reselling it; and that the actual value of the Ford automobile had to be determined in order to arrive at the contract price of the new car, and to determine whether the plaintiffs would have made a profit. Instead, the court seemed to be of the opinion that the market value of the Ford automobile was immaterial, and the defendant was precluded from showing the value thereof in view of the fact that $452.50 was indicated on the order slip as its trade-in value.

In this case, the plaintiffs instead of electing, upon the vendee's breach of contract, to resell the Chevrolet automobile as agents for the vendee, and then recover from him the difference between the contract price and the fair market value received upon the resale as the liquidated amount of plaintiffs' damages (under the rule stated in *Schuenemann v. John G. Wollaeger Co.* 170 Wis. 616, 176 N. W. 59), elected to keep the Chevrolet automobile and to recover $190.20, which they alleged would have been their profit on the transaction had the defendant fulfilled the said agreement. It is provided in sec. 121.64, Stats., of the Uniform Sales Act that,—

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Under those provisions, when a buyer refuses to accept and pay for the goods, the measure of the seller's damages, where there is no available market for the goods in question, or there are special circumstances showing proximate damage of a greater amount, is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. As it appears in this case that there was no available market for the sale of the Chevrolet automobile on September 13, 1937; that the plaintiffs attempted,—without succeeding,—to resell the car, that the value decreased because of the coming out of the 1938 model, and that there were other special circumstances as to the conditions under which the business of the plaintiffs, as retail dealers in automobiles, had to be conducted, it is evident that they sustained proximate damage of a greater amount than the mere difference between the price at which they contracted to sell to the defendant and the manufacturer's prescribed current or market price at retail. Consequently, the measure of plaintiffs' damage "is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract." Sec. 121.64 (2), Stats. That loss, under the facts herein, is the difference between the cost to the plaintiffs of the Chevrolet automobile equipped for delivery to the defendant and the sum of $340, which they were to receive in cash under the

contract, plus the fair market value on a sale at retail of the 1935 Ford. Damages assessed under that rule are not speculative, but are sufficiently definite and certain; and that was the rule adopted and applied under the Uniform Sales Act in *Torkomian v. Russell,* 90 Conn. 481, 97 Atl. 760; *Stewart v. Hansen,* 62 Utah, 281, 218 Pac. 959, 44 A. L. R. 340; and *Poppenberg v. R. M. Owen & Co.* 84 Misc. 126, 146 N. Y. Supp. 478, affirmed in 165 App. Div. 946, 150 N. Y. Supp. 1107, and 221 N. Y. 569, 116 N. E. 1070. See also 2 Williston, Sales (2d ed.), p. 583; *Mason & Risch, Ltd., v. Christner,* 47 Ont. L. R. 52.

When, as in the case at bar, a used car is to be accepted by a retail dealer in part payment of the nominal purchase price for a new car, then the loss directly and naturally resulting to him by reason of the buyer's breach may not be as much as the difference between that nominal purchase price and the cost of the new car to the dealer; and it obviously will be less than the amount of the difference if the fair market value that can be realized on a dealer's sale at retail of the trade-in car is less than the amount allowed as the credit for it. In that event the total amount actually received by the plaintiffs would be less than the nominal purchase price of $792.50. Consequently, in order to compute the amount of plaintiffs' damages by reason of the defendant's breach, it was necessary to have, and there should have been admitted, proof as to the fair market value on a dealer's sale at retail of the defendant's 1935 Ford. The market value would be the price which property will bring when it is offered for sale by a dealer who desires, but is not obliged, to sell, and it is bought by one who is willing, but not obliged, to buy. *Kremer v. Rule,* 216 Wis. 331, 338, 257 N. W. 166. That the credit of $452.50, allowed by the plaintiffs for the defendant's automobile, was not necessarily the fair market value thereof is apparent from the testimony of one of the plain-

tiffs that he did not figure it was worth $452.50 in cash to their garage; that he considered it worth considerably less than that, but was not prepared to tell what he thought it was worth in cash. In view of the absence of proof on that subject, and the court's rulings excluding the introduction of such proof, the judgment must be reversed and a new trial ordered.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.